Stuart R. PAINE, Kenneth E. Hall, and A. Robert Doll, Joint Venturers d/b/a Paine Farms, A Kentucky Joint Venture, Appellants,

v.

LA QUINTA MOTOR INNS, INC., Appellee.

No. 86–CA–1890–MR.

Court of Appeals of Kentucky.

Sept. 11, 1987.

---

Phillip D. Scott, Richard J. Emmett, Greenbaum, Doll & McDonald, Lexington, for appellants.

Calvert Roszell, Richard G. Griffith, Karen L. Marple, Stites & Harbison, Lexington, for appellee.

Before COOPER, HOWARD and MILLER, JJ.

COOPER, Judge.

This is an appeal from a summary judgment and amended summary judgment ordering the appellants to execute a document providing that neither a motel nor hotel may be developed on real property owned by them which is adjacent to the eastern boundary of property the appellee purchased from them in 1980. Reviewing the entire record, we affirm.

The appellants, Stuart R. Paine, Kenneth E. Hall, and A. Robert Doll, joint venturers D/B/A Paine Farms, as sellers, entered into a contract for the sale of 2.6 acres of land adjoining I-64 in Fayette County. The buyer, La Quinta Motor Inns, Inc. [hereinafter "La Quinta" or appellee], a Texas corporation, agreed to pay $275,000 for the land. Appellee planned to and did construct a motel on the property. The contract for sale, executed on June 13, 1980, contained the following paragraph, which is the gravamen of this appeal:

5.2 *Covenants and Agreements of Seller.* Seller covenants and agrees with Purchaser as follows:

(d) On the Closing Date, Seller shall deliver to the Purchaser an instrument in form, scope and substance acceptable to Purchaser which shall provide that neither a motel nor hotel may be developed upon the real property owned by Seller and adjoining the Eastern boundary of the Land. Such instrument shall be fully and properly executed by the Seller; shall be in recordable form; and shall become a covenant which runs with the Land.

Notwithstanding anything to the contrary contained herein, the covenants and agreements contained in this Section 5.2 shall survive the Closing.

The contract also stated that the purchaser buys the land "in consideration of the performance of the agreements of Seller herein contained...." Moreover, the contract stipulated that Texas law would govern the

"validity, construction, enforcement, and interpretation" of the contract.

At the closing, in September of 1980, appellants did not produce any such document, nor apparently did appellee require it before accepting the deed.

In February 1985, appellee was contacted by appellants with information that a buyer was interested in purchasing the adjacent land for purposes of constructing a motel/hotel. In response to a letter from appellee that a sale of this nature would be in derogation of the agreement in the contract for sale, appellants stated that enforcement of the agreement was barred by the Texas four year statute of limitations (Tex.Rev.Civ.Stat.Ann. art. 5529, 5531 (Vernon 1958); repealed and replaced by Tex. Civ.Prac. & Rem.Code Ann. § 16.051 and § 16.004 (Vernon 1986), respectively). Appellants filed this action to have the contract provision declared of no effect. From an adverse summary judgment, appellants bring this action.

The following issues are presented for appeal: 1) whether the Texas statute of limitations applies to preclude enforcement of the contract provision; 2) whether the contract created a burden running with the land; 3) whether the presence of other hotels/motels on other adjoining properties frustrated the purpose of the restriction; 4) whether the doctrine of merger applies. To the extent that any other issues are raised in the brief but not in the prehearing statement, we need not address them. CR 76.14(6).

The trial court, without elucidation, determined that appellee's right to enforce the contractual obligations was governed by Kentucky's fifteen year statute of limitations (KRS 413.090) rather than that of Texas (four year limitation for specific performance pursuant to Tex.Rev.Civ.Stat. Ann. art. 5531, now Tex.Civ.Prac. & Rem. Code Ann. § 16.004). Notwithstanding the express provision to the contrary in the contract, we also believe Kentucky's statute of limitations applies.

The courts of this state are very egocentric or protective concerning choice of law questions. *See* Leathers, *Miller v. Davis:*

*The Sixth Circuit Applies Interest Analysis to an Erie Problem,* 63 Ky.L.J. 923, 931 n. 28 (1975). In *Breeding v. Massachusetts Indemnity and Life Insurance Co.,* Ky., 633 S.W.2d 717 (1982), the court applied Kentucky law even though the insurance contract specified that Delaware law would govern. *Id.* at 719. In applying an interest analysis test (Leathers, *Erie and Its Progeny as Choice of Law Cases,* 11 Hous. L.Rev. 791 (1974)), the court concluded that Kentucky had the "greater interest in and the most significant relationship" to the transaction such that forum state law should apply. *Breeding, supra* at 719. This conclusion was reaffirmed in *Harris Corp. v. Comair, Inc.,* 712 F.2d 1069 (6th Cir.1983), where that court stated that Kentucky applies its own laws when there are "sufficient contacts and no overwhelming interests to the contrary, even if the parties have voluntarily agreed to apply the law of a different state." *Id.* at 1071.

 In the instant case, the property at the heart of the controversy is located in Kentucky, the sellers are in Kentucky, the buyers are in Kentucky by virtue of the franchisee, and the contract was apparently executed at least partially in Kentucky. The only contacts Texas has are the location of the parent corporation and the source of the contract. Our own citizens would have a cause of action in these circumstances, and our statute evinces a public policy that the legislature deems fifteen years to be an appropriate statute of limitations for written contracts. We see no reason to circumscribe this policy vis-a-vis a foreign corporation having the enumerated contacts with this forum.

 Even though we conclude that Kentucky choice of law shall control this action, we think it is irrelevant regarding statute of limitations, as we do not believe the contract was breached at closing, but at the point when appellants attempted to sell the adjacent property by contacting appellee with that information. Simply failing to require at closing the delivery of an executed document called a restrictive covenant is not a breach, albeit it is unwise. The contract itself specified the agreement

and intentions of the parties: that appellants' land would be burdened with the restrictions, not just in the event a recordable covenant were delivered at closing, but also from the date of execution of the contract for sale. This is shown by the provision that the seller's compliance with the agreements and covenants was a condition precedent to appellee's performance. The *delivery* of a recordable covenant was not the sine qua non of paragraph 5.2(d); the agreement itself that was embodied or memorialized in that clause was the essence of that paragraph. Until the agreement itself was breached, the statute of limitations did not begin to run under either Texas or Kentucky law.

■ We also agree with the trial court that the contract created a burden running with the land. This burden is more in the nature of an equitable servitude or easement. Whether an equitable servitude runs with the land to bind subsequent purchasers is dependent on 1) whether the restriction touches and concerns the burdened land; 2) whether the original promisor (appellants) and promisee (appellee) intended the burden to run with the land; and 3) whether the successor of the burden has notice of the restriction. 5 R. Powell, *The Law of Real Property* ¶ 673(1) (1986) [hereinafter "Powell"]. Clearly, the agreement here satisfies these requirements. The restriction relates to the land sold to the appellee in that both parcels are adjacent, and limiting the commercial use of appellants' land (the servient estate) will enhance the value of appellee's land for the purpose for which it was bought. It is evident from the contractual provision and the conduct of the parties that they intended subsequent purchasers of the adjacent property to be bound. It is apparent that the restriction formed part of the consideration for the purchase of appellee's tract: Article I of the contract recites that "[p]urchaser, in consideration of the performance of the agreement of Seller herein contained, ... hereby buys and agrees to take the land from Seller."

■ Finally, contrary to what appellants argue, in this situation a subsequent purchaser for value who takes with notice of the restriction may be bound, even though the restriction may not be recorded. *Swinney v. Haynes*, 314 Ky. 600, 236 S.W.2d 705 (1951); *Hedges v. Stucker*, 237 Ky. 351, 35 S.W.2d 539 (1931); *Restatement of Property* §§ 524,525 (1944); 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* §§ 304,305 (1965). *Cf.* 3 Powell ¶ 411(4) (1987); 5 Powell ¶ 671. The operative element to bind successors in easements and servitudes is notice. If a subsequent purchaser is bound by those restrictions of which he has notice, a fortiori, the original promisor must be bound by his promise. This result may be reached by either the doctrines of estoppel or specific performance of a promise made which induced performance on the part of appellee. *Restatement of Property* §§ 524,525. Here appellants made a promise, induced reliance thereby, and now are attempting to avoid their obligations. They cannot rely on this Court to aid them. The trial court did not err in finding that the contract created a burden running with the land.

Appellants also contend in their prehearing statement that the presence of other motels/hotels in the area constitutes a change of conditions such that the restriction should not be enforced. This point was not briefed and therefore we decline to address it.

■ While the doctrine of merger was raised in the prehearing statement, it was not argued before the trial court, nor was it briefed on appeal. We shall briefly comment, however, that that doctrine would not provide the relief sought even had it been properly before us. The parties here intended that the agreement in the contract was collateral to the closing, as evidenced by the stipulation that the covenants and agreements would survive the closing. It is clear that they did not intend the restrictions to have only prospective application in the event there actually was a document produced and recorded with the deed at closing. The separate document would merely reduce to recordable form their already agreed upon restriction. Therefore the contract contained separate and distinct

rights and did not merge into the deed. *Smith v. Smith*, 304 Ky. 562, 201 S.W.2d 720 (1947). *Cf. Langenback v. Mays*, 205 Ga. 706, 54 S.E.2d 401 (1949); *Thompson v. Reising*, 114 Ind.App. 456, 51 N.E.2d 488 (1943); 26 C.J.S. *Deeds* § 91.c. (1956).

Furthermore, we cannot discern where the parties envisioned that this document would be recorded. If it had been recorded with appellee's deed, it would not really have given notice of the restriction to anyone searching title for appellants' adjacent tract, notwithstanding *Bishop v. Rueff*, Ky. App., 619 S.W.2d 718 (1981). Perhaps it was to be recorded with the deed to the adjacent property still held by appellants. If so, this further strengthens the collateral and independent nature of the contract.

Appellants' posturing about mutuality of enforcement, positive versus negative easements, and which party was to draw up the document at closing, is just that. We recognize the existence of reciprocal easements or covenants, but to suggest that La Quinta cannot restrict appellants from constructing a motel on their property unless appellants could likewise restrict La Quinta's property is ridiculous. That is tantamount to a utility company's not being able to get an easement for utility poles across an individual's property unless that individual also has the right to erect poles on the company's property. Concerning negative easements, we refer appellants to 5 Powell ¶ 675(1), (3)(b), and Black's Law Dictionary 930 (5th ed. 1979). Thirdly, a plain reading of the contract for sale makes it clear that it was appellants' responsibility to produce the document at closing that would become the restrictive covenant ("Seller shall deliver to the Purchaser an instrument ... *acceptable to the Purchaser* . . . .") (emphasis added). Appellants implied, in at least three different places, that it was not their responsibility to produce such a document. Throughout this action, appellants have engaged in such subterfuge. They seek to have equity invalidate this restriction because appellee has slept on its rights by not requiring the document at closing, and equity aids the vigilant. Yet appellants waited for the statute of limitations to run even though they were being approached from the beginning by potential buyers, and they now seek to renege on a promise they do not attempt to deny having made. We caution that this would have been a different case had appellants already sold the property to a bona fide purchaser for value without notice of the restriction. But here we are dealing with the original parties to the agreement who have thus far acted in conformity with that original agreement.

After reviewing the entire record below, we agree with the trial court that the contract alone created a restriction in the nature of an equitable servitude or easement on appellants' use of the property in question adjacent to appellee's tract. The parties do not disagree as to the facts herein and appellee was entitled to judgment as a matter of law. *Fischer v. Jeffries*, Ky. App., 697 S.W.2d 159 (1985); CR 56.03. The judgment of the Fayette Circuit Court is affirmed. The appellants are ordered to execute the instrument contemplated by the parties restricting the use of appellants' property adjoining the eastern boundary of appellee's land. This restriction shall run with the land for a reasonable time.

All concur.