PHARO DISTRIBUTING COMPANY; David Pharo; and David Pharo, d/b/a Pharo Distributing II, Appellants,

v.

Eric STAHL, Appellee.

and

PHARO DISTRIBUTING COMPANY; David Pharo, Individually; and Pharo Distributing Company and David Pharo, d/b/a Pharo Distributing II, Appellants,

v.

Eric STAHL, Appellee.

and

Eric STAHL, Cross-Appellant,

v.

PHARO DISTRIBUTING COMPANY; David Pharo, Individually; and Pharo Distributing Company and David Pharo, d/b/a Pharo Distributing II, Cross-Appellees.

Nos. 88–CA–0982–MR, 88–CA–2484–MR and 88–CA–2550–MR.

Court of Appeals of Kentucky.

Dec. 1, 1989.

Discretionary Review Denied by Supreme Court Jan. 31, 1990.

Ed W. Tranter, Ft. Thomas and Dale L. Horner, Jr., Maysville, for Pharo Distributing Co., et al.

Bernard C. Hargett, Maysville, for Eric Stahl.

Before McDONALD, MILLER and REYNOLDS, JJ.

MILLER, Judge.

These are two appeals and a cross-appeal from a judgment of the Mason Circuit Court wherein appellee/cross-appellant, Eric Stahl, upon trial by jury, was awarded $50,000 damage for breach of contract.

The facts are as follows: Appellant/Cross–Appellee, Pharo Distributing Company (the company), had a franchise agreement with Strohs–Schlitz Brewery to distribute in several Kentucky counties, including Bracken, Mason, and Lewis. The company entered into an oral, open-ended subdistributorship agreement with Stahl to distribute Schlitz products in the above-named counties. This arrangement continued for many years. Strohs products were distributed in Bracken, Mason, and Lewis counties by Parker Beverage company. On or about June 9, 1987, appellant, David Pharo (Pharo), president of the company, advised Stahl that the subdistributorship would be terminated effective June 15, 1987. Pharo had purchased the Parker Beverage Company and apparently intended to let Parker Beverage distribute both Strohs and Schlitz products.

On June 27, 1987, Stahl filed suit in the Mason Circuit Court against Pharo and the company, alleging breach of contract, willful destruction of business, tortious interference with prospective business arrange-

ments (based upon Stahl's alleged efforts to purchase Parker Beverage) and slander. He sought actual and punitive damages, as well as injunctive relief. He posted a $5,000 injunction bond. Kentucky Rules of Civil Procedure (CR) 65.05. A temporary injunction was granted by the trial court, but upon motion to the Court of Appeals, pursuant to CR 65.07, same was dissolved. A hearing was held to determine whether the company and Pharo had sustained any damages during the time frame the temporary injunction was in effect. The trial court denied same.

The case proceeded to trial and the jury returned a verdict in favor of Stahl for $50,000. Pharo and the company appeal, alleging (1) Stahl did not properly prove his damages (Appeal No. 88–CA–2484–MR), and (2) the trial court erred in refusing to award damages as a result of the temporary injunction (Appeal No. 88–CA–0982–MR). Stahl cross-appeals (No. 88–CA–2550–MR), alleging the trial court erred in failing to give certain instructions.

■■■ We first address Appeal No. 88–CA–0982–MR. The trial court made a finding that Pharo could not recover for any damages while the injunction was in effect because this Court, upon dissolving same, did not make the dissolution retroactive. This fallacious argument was advanced by Stahl and is without merit. An appellate court ruling that an injunction should not have been issued is impliedly retroactive. Were we to adopt the position of Stahl, then no litigant would ever be entitled to damages for the wrongful issuance of an injunction. This is plainly not the law in this jurisdiction. As stated in *Teamsters Local # 783 v. National Linen Service*, Ky., 472 S.W.2d 671 (1971):

> The whole concept of an injunction bond, particularly in the case of an ex parte restraining order, is that the order is issued on peril of a subsequent determination that injunctive relief is not properly grantable. The party who obtains the

order takes the chance of the validity of a grant of injunctive relief.

*Id.* at 674.

It does not follow from the foregoing, however, that Pharo and the company are automatically entitled to damages. Where injunctive relief is the sole relief sought, damages and attorney fees are not recoverable. *See International Brotherhood of Firemen and Oilers, Local 320 v. Board of Educ. of Jefferson County*, Ky., 393 S.W.2d 793 (1965). However, the ancillary grant of an injunction may form a predicate for damages. Stahl argued below that the injunctive relief was not ancillary, but an integral element of the damages he sought. It appears he has abandoned this position on appeal. We conclude the injunction was ancillary to the relief sought by Stahl which was, essentially, money damages for alleged tortious conduct and breach of contract.

■■■ Liability of the surety and the principal may be enforced by motion.[1] CR 65.05(1), (2). Where an injunction was wrongfully issued, a business may recover lost profits, costs, and attorney fees, provided same are ascertainable with reasonable certainty. *See Holliday v. Sphar*, 274 Ky. 556, 119 S.W.2d 656 (1938) (overruled in *Pauline's Chicken Villa, Inc. v. KFC Corp.*, Ky., 701 S.W.2d 399 (1985) on the issue of damages to unestablished businesses), and *Teamsters Local # 783*, Ky., 472 S.W.2d at 672. Upon review of the record, we find that Pharo offered evidence of loss of gross *receipts*, not lost profits, and thus cannot prevail on this issue. However, he properly established that he incurred costs and attorney fees in the amount of $2,515. He is entitled to recover that sum. Thus, the judgment in Appeal No. 88–CA–0982–MR is affirmed in part and reversed in part.

■■■ We now turn to Appeal No. 88–CA–2484–MR wherein Pharo and the company attack the $50,000 judgment on the basis Stahl failed to properly prove his damages. The parties agree the contract is one pertaining to the sale of goods and

---

within the purview of the Uniform Commercial Code (Kentucky Revised Statutes (KRS) 355.2–309(2), (3)).[2] The code was held applicable to a franchise agreement similar to this case in *Leibel v. Raynor Mfg. Co.*, Ky.App., 571 S.W.2d 640 (1978). Such contracts might be variously referred to as contracts "indefinite in duration," "on-going," "at-will," or "open-ended." We observe at the outset that suits for breach of this type of contract are not unique. As in any other suit for breach, the object is to place the offended party in the position in which he would have been had the contract been performed as required by law. *See Evergreen Land Co. v. Gatti*, Ky.App., 554 S.W.2d 862 (1977). Simply stated, under the code provision, an at-will contract is to continue for a reasonable period of time and may be breached by termination without reasonable notice beforehand.[3] Reasonable notice is that period of time which, under the circumstances of the case, would allow one to make alternate arrangements upon cessation of the contract and minimize losses. *Cf. McGinnis Piano and Organ Co. v. Yamaha Int'l Corp.*, 480 F.2d 474 (8th Cir.1973) (court discusses damages for breach arising from failure to give reasonable notice of termination and for failure to provide for reasonable duration of a contract). In this jurisdiction, whether reasonable notice was given under the circumstances of the case is a question of fact. *See Leibel*, 571 S.W.2d at 644. *Cf. McCoy v. American Fidelity Bank & Trust Co.*, Ky., 715 S.W.2d 228

(1986). It is to be determined by the finder of fact unless only one legitimate inference can be drawn from the facts proven, in which case the question is one of law for the court. *See Meriweather's Adm'x v. Pickering*, 273 Ky. 367, 116 S.W.2d 670 (1938). *Cf. Teitelbaum v. Hallmark Cards, Inc.*, 25 Mass.App. 555, 520 N.E.2d 1333 (1988) (court held notice reasonable as a matter of law where retailer obtained another full line of inventory and thus incurred no harm), and *Aaron E. Levine and Co. v. Calkraft Paper Co.*, 429 F.Supp. 1039 (E.D.Mich.1976) (in granting defendant/supplier's motion for summary judgment, court held reasonable notice of termination given as a matter of law). The obvious object of the reasonable notice requirement is to afford the party losing the contract an opportunity to make appropriate arrangement in lieu thereof by dispersing inventory, adjusting work force, exploring probable alternatives, and in general, "getting his house in order" to proceed in absence of the former relationship. It is based upon fairness and equity.

It is not the termination of an at-will contract that constitutes the breach; the right to terminate is inherent in the nature of the contract. Nor is it relevant that a party losing an at-will contract suffers losses. Again, this is an inherent probability. Rather, it is the failure to give reasonable notice before termination that constitutes breach. As heretofore indicated, the question of whether reasonable notice to termi-

---

2. KRS 355.2–309. ABSENCE OF SPECIFIC TIME PROVISIONS—NOTICE OF TERMINATION.—(1) The time for shipment or delivery or any other action under a contract if not provided in this article or agreed upon shall be a reasonable time.

(2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

(3) Termination of a contract by one (1) party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

3. In his brief, appellee/cross-appellant maintains a contract, within the purview of KRS

355.2–309, may be breached in either of two respects: (1) by premature termination (before expiration of a reasonable time as provided in section (2)), or by failure to give reasonable notice of termination under section (3). He insists there is a valid distinction between the two in that premature termination may authorize damages designed to recoup investment, while the latter breach authorizes damages only incident to alternative arrangements. The disposition of the case at hand does not require an examination of this argument. The contract had continued for a long period of time, thereby precluding any question of recoupment of investment. *See of relevance* Peltier and Coleman, *Commercial Law*, 67 Ky.L.J. 523 (1978–79) (containing a discussion of *McGinnis Piano and Organ Co. v. Yamaha Int'l Corp.*, 480 F.2d 474 (8th Cir.1973)).

nate was given is one of fact unless, of course, the notice is so clearly unreasonable as to admit no other inference. In this latter event, it presents a question of law for the court. We think the case at hand falls into this category. The contract had been in existence for many years. Pharo and the company sought to and did terminate the relationship almost instantaneously (just six days). As a matter of law, the notice was clearly unreasonable. The contract was breached.

■ Now we turn to the question of damages. Since it is the failure to give reasonable notice of termination rather than the termination of the contract itself which constituted the breach, the damages must, of necessity, be attuned to this failure. The damages may not reflect loss of a contract or discontinuance of the business relationship. If reasonable notice had been given, Stahl, in all probability, would have suffered loss by the mere discontinuance of the business relationship. The loss he suffered must be limited to those elements directly relating to lack of notice and the lost opportunity to "put his house in order." An examination of the evidence and instructions are required.

From the record, we discern that instead of limiting his proof of damages to the period of time necessary to put his house in order, Stahl offered proof of the value of his right to distribute Schlitz products. This was error. Stahl depleted his inventory of Schlitz products (in all probability at a profit) on June 16 or 17, and secured new or expanded rights to distribute the entire line of Heileman products (a competing brand of beer) on November 1, 1987. The instructions given by the trial court permitted the jury to consider the length of time necessary to recoup prior investments which we have deemed not relevant. Thus, we must reverse and remand on this issue.

On remand, Stahl should be permitted to establish his damages incident to the failure to receive reasonable notice of termination. The amount of damages should be limited to those incurred during the time span of what would have been "reasonable notification." *See Circo v. Spanish Garden Food Mfg. Co.*, 643 F.Supp. 51 (W.D. Mo.1985). In arriving at an appropriate time span, consideration may, in some case, be given to the length of time required to secure alternate sources of supply. *Cf. Teitelbaum*, 520 N.E.2d at 1333 (plaintiff's greeting card store was destroyed by fire; Hallmark terminated supply agreement and before date of reopening store, plaintiff had secured new line of supply through American Greeting Cards; held, plaintiff did not suffer damages for lack of a supplier), and *Aaron E. Levine*, 429 F.Supp. at 1039.

Finally, we examine the issues raised by Stahl in his cross-appeal (No. 88–CA–2550–MR). First, he asserts he was entitled to an instruction permitting him to recoup his investment as the contract was prematurely terminated and was not of a reasonable duration. We reject this argument for the reasons set forth above. Next, he asserts he was entitled to an instruction on the tort of interference with prospective contractual relations based upon Pharo's interference with his (Stahl's) "attempts" to purchase Parker Beverage. We have examined the testimony and conclude, as did the trial court, that Stahl was not entitled to an instruction on tortious interference nor on the issue of punitive damages. Cross–Appeal No. 88–CA–2550–MR is affirmed.

For the foregoing reasons, the judgment of the Mason Circuit Court is affirmed in part and reversed in part on Appeal No. 88–CA–0982–MR; reversed and remanded on Appeal No. 88–CA–2484–MR; and affirmed on Cross–Appeal No. 88–CA–2550–MR.

All concur.