**TRACTOR AND FARM SUPPLY, INC., a Kentucky corporation, and Laura Evelyn Vance, a Kentucky resident, Plaintiffs,**

v.

**FORD NEW HOLLAND, INC., a Delaware corporation, Defendant.**

Civ. A. No. C–94–0046–BG(H).

United States District Court, W.D. Kentucky, Bowling Green Division.

March 15, 1995.

H. Jefferson Herbert, Jr., Herbert & Herbert, Glasgow, Kentucky, J. Michael Dady, Ann K. Grossman, Lindquist & Vennum, Minneapolis, Minnesota, T. Kevin Flanery, Woodward, Hobson & Fulton, Lexington, Kentucky, for Plaintiff.

Lionel A. Hawse, Woodward, Hobson & Fulton, Lexington, Kentucky, for Defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on Defendant's motion for summary judgment which requires the Court to consider delicate choice of law issues. Plaintiffs seek compensatory and punitive damages for Defendant's wrongful termination of its dealership agreement with Plaintiff. Plaintiffs' claims consist of the following: (1) breach of contract, (2) vio-

lation of the Michigan Franchise Investment Law, (3) fraud and misrepresentation, (4) estoppel, (5) unjust enrichment, (6) tortious interference with contract and prospective economic advantage, (7) recoupment, and (8) punitive damages. The Court will sustain Defendant's motion in part.

## I.

For twenty-five years, Plaintiff, Tractor and Farm Supply, served as a New Holland dealership in Glasgow, Kentucky. In 1985, the Ford Motor Company bought New Holland and continues to operate it as Ford New Holland, a Delaware corporation.

On May 21, 1987, Laura Vance, the President and sole shareholder of Tractor and Farm Supply, entered into a written dealership agreement with Defendant Ford New Holland. According to Ms. Vance, Defendant's zone manager for her area assured her at this time that the written agreement was a mere formality and that their business relationship would be a continuing one. Nevertheless, the agreement that the parties signed provided for a three-year extension, unless either party gave six months notice of an intention not to renew the agreement. The agreement also provided that either party could elect, without cause, not to renew it. Because neither party elected not to renew the agreement at the expiration of its first term in 1990, it extended through December 21, 1993.[1]

Sometime during the second term of the agreement, Defendant decided that it was "not in its best business interests" to continue its business relationship with Plaintiffs and, by letter dated June 9, 1993, Defendant notified Plaintiffs that it intended not to renew the dealership agreement. Shortly thereafter, the Ford dealership in the Glasgow area, Ben and Elmer Tractor Company,

which had been selling New Holland equipment at reduced rates since 1992, hired several of Plaintiffs' employees. Plaintiffs assert that these employees reported that Ben and Elmer's management induced them to leave their jobs by telling them that Ben and Elmer's would soon be the new New Holland dealer in the trade area and Plaintiffs would be forced to reduce staff without the New Holland line.[2] Immediately after the effective date of the termination of Plaintiffs' agreement with Defendant, Ben and Elmer's officially became the New Holland dealership in the Glasgow area.

## II.

Some of Plaintiffs' claims are properly analyzed according to the principles of contract law, others according to tort law. Because the dealership agreement contains a choice of law provision, the Court must decide whether to apply Michigan or Kentucky law for each individual claim.

## A.

■ The franchise agreement between Ford New Holland, Inc. and Tractor and Farm Supply contains a provision stipulating that the "agreement shall be governed by and interpreted in accordance with the laws of the State of Michigan." *See* Dealer Agreement, ¶ 29. Defendant is incorporated in Delaware and headquartered in Pennsylvania, but conducts business through several branch sales offices in other states. The branch office with which Plaintiffs' consistently dealt, and with whom they dealt at the time the written agreement was executed and signed, was located in Michigan. It has since relocated to Georgia. Plaintiffs always have conducted business in Kentucky. Oddly enough, Defendant urges the Court to ignore the choice of law provision in the agreement that *it* drafted and to apply Kentucky law

---

1. On April 28, 1988, during the first term of the written agreement, Plaintiffs had received a letter from Larry Fisher, the manager of the Ford New Holland branch in Troy, Michigan. The letter stated that Ford New Holland wanted to consolidate the Ford New Holland dealership in the Glasgow area, but would continue to honor its contractual commitments to Plaintiffs. The letter also noted that the parties "relationship will continue under the written dealer agreement

unless and until grounds for termination arise." The non-renewal did not occur until five years later.

2. Defendant argues that Ben and Elmer's was improperly reselling New Holland Equipment from other dealers and discontinued the practice after Defendant advised them of their wrongdoing.

when deciding this matter. Plaintiffs contend that the Court must apply Michigan law in accordance with the agreement.

■ In a diversity action, the Court must follow the choice of law principles enunciated by the highest court of the state in which the Court sits. *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992); *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985) ("If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it."). Unfortunately, no Kentucky court has decided whether or not to uphold a choice of law provision contained in a franchise agreement between a Kentucky company and an out of state business.

The closest analogous situation in Kentucky case law involves an insurance company's contract of adhesion, which contained a provision that the contract was to be governed by the law of the state of the delivery of the policy. *Breeding v. Massachusetts Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982). In *Breeding*, the court applied the logic of interest analysis and *Restatement 2d, Conflict of Laws*, § 187 and § 187, comment d, to apply Kentucky law to the substantive issues in the case. In doing so, the court wrote: "Justice, fairness and the best practical result may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence of the parties, has the greatest concern with the specific issue raised in the litigation." *Id.* at 719.

The *Breeding* decision would seem to indicate that "Kentucky law will apply to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary, even if the parties have voluntarily agreed to apply the law of a different state," *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir.1983). However, this is not our case. First, *Breeding* involved a relatively non-specific designation of the applicable substantive law ("contract to be governed by the law of the state of the delivery of the policy"). *Breeding*, 633 S.W.2d at 719. The company, therefore, did not have a valid claim that it would be deprived of clearly ascertained and bargained-for rights if the forum state's law

were applied, since the company conducted business and delivered policies in Kentucky. Second, the insurance contract was a contract of adhesion, and a decision to apply its choice of law provision would have resulted in a substantial injustice to the insured, in direct contravention to the advice contained in *Rest.2d, Conflict of Laws*, § 187, comment b, which the court had already announced that it found persuasive. Finally, unlike the case at bar, the drafter of the contract in *Breeding* was urging the court to apply the choice of law provision, and not the law of the forum state.

Another analogous situation was described in *Paine v. LaQuinta Motor Inns*, 736 S.W.2d 355 (1987), which involved a choice of law provision in a contract for sale of Kentucky land. In *Paine*, a Texas corporation contracted for the purchase of Kentucky real estate. The buyers (as franchisees) and sellers were in Kentucky and the contract was executed partially in Kentucky; the only contacts to Texas were the parent corporation and the source of the contract. Later, the vendors filed suit to have declared of no effect a provision in the land sale contract that restricted the use of property adjacent to the purchased property. Using interest analysis, and noting that "courts of this state are very egocentric or protective concerning choice of law questions," the court declared that the Kentucky statute of limitations applied to enforcement of the contract's provisions, notwithstanding the contract's provision that Texas law should apply to questions concerning the validity, enforcement and interpretation of the contract. *Id.* at 357–58.

*Paine* is similar to this case because the plaintiffs, who were Kentucky residents, urged the court to uphold the choice of law provision in the contract they signed, and the defendant advocated application of Kentucky law. Although the decision in *Paine* was adverse to the Kentucky residents who filed the action, the court based its decision to apply Kentucky's statute of limitations on the possible negative precedential effects on other Kentucky residents were a contrary decision reached: "Our own citizens would have a cause of action in these circumstances, and our statute evinces a public policy that the legislature deems fifteen years to be an ap-

propriate statute of limitations for written contracts."

Here, there is no threat to future Kentucky residents seeking to rely on Kentucky's procedural laws. Furthermore, the court's decision in *Paine* was well in keeping with the tradition to apply the procedural law of the forum state, regardless of the choice of law decision regarding substantive issues. Here the Court will choose which state's *substantive* law to apply; Kentucky's right to determine its judicial procedure will not be affected in any way.

The Court is confronted with conflicting choices, each having a certain appeal. Nevertheless, the decision is a clear one. Although the Sixth Circuit stated in *Harris Corp., supra,* that "Kentucky applies its own law unless there are overwhelming interests to the contrary," a more fundamental goal of contract law is to uphold clearly ascertained and negotiated contract rights. To permit a drafter of the choice of law provision to challenge its legality is unpalatable to say the least. If any ambiguities in a contract are to be construed strictly against the drafter, *Wolford v. Wolford,* 662 S.W.2d 835, 838 (Ky. 1984), the Court does not consider binding Defendant by its own provision to be much of a logical leap. Moreover, given that Defendant had substantial contacts with Michigan at the time of the contract's creation, which renders the choice of Michigan law highly reasonable, Plaintiff should be entitled to rely on the signed agreement. Finally, public policy in Kentucky favors parties' freedom to contract for substantive rights. *General Electric v. American Buyer's Cooperative,* 316 S.W.2d 354 (Ky.App.1958) (recognizing that freedom to contract is embraced in the meaning of liberty as that term is employed in the United States and Kentucky constitutions). Consequently, the Court will uphold the choice of law provision and will interpret the contract in accordance with Michigan law. Accordingly, the Court will consult Michigan law to evaluate Plaintiffs' breach of contract and implied covenant of good faith and fair dealing claims, as well as their assertion that Defendant violated the Michigan Franchise Investment Law.

### B.

■ Plaintiffs' claims of fraud and misrepresentation are a defense to enforcement of the express contractual provisions. When deciding these claims, the Court will apply Kentucky law. Although Plaintiffs' claims technically are based on the contract at issue, which the Court will interpret in accordance with Michigan law, Defendant's statements that allegedly form the basis for these claims are subject to the parole evidence rule, which is not a rule of contract interpretation, but is a rule of substantive law, which the forum state's legal precedence governs. *General Aviation, Inc. v. Cessna Aircraft Co.,* 703 F.Supp. 637, 641 n. 3 (W.D.Mich.1988) (hereinafter *General Aviation* I).

■ Issues not affected by the parties' choice of law provision in their written agreement must be decided in accordance with the law of the forum state because all of Plaintiffs' remaining claims are allegations of business torts involving Kentucky residents, in whom the Commonwealth of Kentucky has a significant interest. The Court therefore will apply Kentucky law to determine whether Defendant is entitled to summary judgment of the following counts of Plaintiffs' Complaint: promissory estoppel, unjust enrichment, tortious interference with contracts and prospective economic advantage, recoupment, and punitive damages.

### III.

Plaintiffs' primary claim is that Defendant breached its written agreement by deciding not to renew the dealership agreement without good cause, in spite of its repeated oral promises that the parties' relationship would be a continuing one, absent poor performance by Plaintiffs. The written agreement in question provides for automatic renewal unless "either party notifies the other of the intention not to have the terms of this agreement extended" and apparently gives either party the right not to renew "at-will", Dealership Agreement, ¶ F. The parties spent considerable effort disputing whether Defendant was permitted not to renew the agreement absent good cause.

The Court must first decide whether the Michigan Franchise Investment Law (the "Franchise Law") is applicable here. Plaintiffs charge that the renewal provision in the parties' dealership agreement is in violation of the Franchise Law because it permits a dealer to fail to renew an agreement without good cause. If it does apply, then the Franchise Law will supersede the provisions of the contract at issue by providing a prerequisite for non-renewal.

■ Defendant argues that the Franchise Law is inapplicable because Plaintiffs did not pay a franchise fee and, therefore, are not a franchise within the Franchise Law's definitions. *See* M.C.L. § 445.1502(3)(c) (requiring payment of a franchise fee for "franchisee" status) and § 445.1503(1) (defining franchise fee as "a fee or charge that a franchisee . . . is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payment for goods and services"). Consequently, Defendant argues that Michigan's Farm and Utility Franchise Act governs this dispute and that the non-renewal provision is valid and enforceable. M.C.L. 445.1451, *et seq.*

The Farm and Utility Equipment Franchise Act is narrow in scope and governs only the repurchase of inventory by agricultural equipment suppliers upon termination of a dealer agreement. There is no allegation that Defendant failed to repurchase inventory from Plaintiffs. Moreover, the Franchise Law's remedies are cumulative; the Law clearly states "[n]othing in this act shall limit a liability which may exist by virtue of any other statute or common law if this act were not in effect." M.C.L. § 445.1434.

■ Given that the Farm and Utility Equipment Franchise Act does not preclude application of the Franchise Law, the Court must decide whether Tractor and Farm Supply meets the definition of a franchise. The answer to this question turns on whether Plaintiffs can be construed to have paid a franchise fee as required by the Franchise Law.

There are no cases which concern a business relationship similar to the one in this litigation, which also seeks to invoke the Franchise Law. The Michigan Attorney General is authorized to promulgate rules to implement the Franchise Law, however. M.C.L. § 445.1541. Michigan Administrative Code Rule 445.101(2)(c), promulgated in accordance with the Attorney General's authority, provides that:

[t]he words 'fee or charge' . . . include, but are not limited to: . . . Payments for services. These payments are presumed to be in part for the right granted to the franchisee to engage in the franchise business. Ideas, instruction, training, and other programs are services and not goods, irrespective of whether offered, distributed, or communicated by word of mouth, through instructions or lectures, in written or printed form, by record or tape recording, or any combination thereof.

The Court finds this a logical interpretation of the Franchise Law. Plaintiffs' payments for employee training, an on-line computer service, and their required payments for, and use of, Defendant's advertising, promotion, and sales materials, therefore, constitute a franchise fee. Consequently, the Franchise Law applies to the agreement in this case.

■ Unfortunately, Plaintiffs' must clear yet another legislative hurdle in order to invoke any of the Franchise Law's protections. As the court noted in *General Aviation* I, the statute evinces a clear legislative intent to exempt from its coverage renewals of franchises that existed before the Franchise Law was enacted and modifications of franchise agreements where there is no interruption in the operation of the franchise and no *material change* in the franchise relationship. *General Aviation* I, 703 F.Supp. at 648 (emphasis added) (*citing* M.C.L. § 445.1506(1)(e) and § 445.1503(3)). Although the parties' relationship began several years before the Franchise Law took effect, it was not governed by a written agreement until 1987. The Court concludes that the 1987 written agreement, which contained additional responsibilities and benefits, and was created by a new owner of the New Holland line, does constitute a material change in the franchise relationship. There-

fore, Plaintiffs are not excluded from the Franchise Law's protection.

■ The Franchise Law renders void and unenforceable any "provision that permits the franchisor to refuse to renew a franchise on terms generally available to other franchisees of the same class type under similar circumstances." M.C.L. § 445.1527(e). The Sixth Circuit recently interpreted this section and held that § 1527 of the Franchise Law requires a legitimate, non-discriminatory reason for non-renewal. All similarly situated franchisees must be treated similarly. *See General Aviation, Inc. v. Cessna Aircraft Co.*, 13 F.3d 178, 180–183 (6th Cir.1993).

Plaintiffs charge that they consistently met Defendant's sales and performance requirements and have submitted affidavits containing allegations that Defendant's decision not to renew was motivated by animosity toward Garret Vance [3], Laura Vance's son, and a desire for a consolidated Ford and New Holland dealership in Plaintiffs' trade area.[4] It is clear that Plaintiffs have alleged sufficient facts which suggest that their non-renewal arose from discriminatory and unequal treatment. Although their suggestions may not convince a jury, they will withstand Defendant's motion for summary judgment.[5]

### IV.

■ In Count Four, Plaintiffs assert that Defendant should be estopped from not renewing their franchise agreement because of extraneous oral representations that modified the written contract. According to Plaintiffs, Defendant made representations to them, before and after the written agreement was signed, that their relationship "would be a continuing one" so long as Plaintiffs capably performed as dealers. Plaintiffs further assert that they were induced to spend time, money and effort to develop and cultivate

customer interest in New Holland products in the Glasgow, Kentucky trade area and that Defendant's decision not to renew their agreement, and its subsequent dealership agreement with a nearby company, is inequitable. Plaintiffs charge that equity prevents a manufacturer from invoking a clause in a contract where it has, by its conduct, led the dealer to believe it would not rely on that clause against the dealer.

■ Although the doctrine of promissory estoppel is "alive and well" in this commonwealth, *McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 11 (Ky.App.1990), estoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract. *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir.1990) (hereinafter *"General Aviation II"*) (*citing General Aviation* I, 703 F.Supp. at 647 n. 10 and *Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir.1984) (holding that promissory estoppel "is not a doctrine designed to give a party to a negotiated commercial contract a second bite at the apple in the event it fails to prove breach of contract")). And although Plaintiffs may have been induced to develop a valuable customer base in their trade area, doing so was a requirement of their signed dealership agreement. *See* ¶ 2, Dealership Agreement (requiring a dealer to "vigorously and aggressively" promote the sale of New Holland products).

Defendant's promises that it would not invoke the non-renewal clause absent poor performance were not made a part of the parties' written agreement. Though Defendant's promises may have been calculated to induce a certain performance and reliance by Plaintiffs, the performance demanded was the same performance that, in part, constituted consideration for the franchise agreement.

---

3. Garret Vance recently has developed a John Deere dealership in close proximity to Tractor and Farm Supply.

4. It could be argued that whether Plaintiffs' sales and performance figures exceeded standards has little to do with the existence of non-discriminatory reasons for non-renewal. These are matters for argument at trial.

5. Because the Franchise Law supersedes the "at-will" provisions of the agreement and provides a remedy, the Court need not discuss the application of the Kentucky parol evidence rule to Plaintiffs' contract claims. However, it is surely safe to say that Plaintiffs are better off under the protection of the Franchise Law, than proceeding without its protection and seeking to establish breach of contract based on parol evidence.

The Court agrees with the logic of *General Aviation* I & II, and will sustain Defendant's motion for summary judgment on this claim.

## V.

In Count Five, Plaintiffs assert that Defendant was unjustly enriched when it failed to renew its dealership with Plaintiffs, despite its promises to the contrary, without adequately compensating them for the valuable good will that they generated in their trade area. For an unjust enrichment claim to be viable, Plaintiffs must show the following elements: (1) a benefit conferred upon the defendant at the plaintiff's expense, (2) a resulting appreciation of the benefit by the defendant, and (3) an inequitable retention of the benefit without payment for its value. *See Guarantee Electric v. Big Rivers Electric Corp.*, 669 F.Supp. 1371, 1381 (W.D.Ky.1987). Nevertheless, the doctrine of unjust enrichment has no application in a situation where there has been an explicit contract which has been performed. *Codell Construction Co. v. Commonwealth*, 566 S.W.2d 161 (Ky.App.1977).

The benefit created by Plaintiffs was part of the performance required in their written dealership agreement. Plaintiffs were required to develop good will in their trade area by vigorously promoting a strong interest in New Holland equipment and thereby creating a wide customer base. Although Defendant unquestionably appreciated the development of valuable good will conferred on it at Plaintiffs' expense, whether Defendant's retention of this benefit without compensation is inequitable is another matter. After all, Defendant contributed to the generation of good will by producing and promoting a quality product.

After careful reflection, the Court holds that Plaintiffs' claim will not withstand summary judgment because it fails to meet the third prong of the test enunciated in *Guarantee Electric, supra.* The doctrine of unjust enrichment cannot be properly applied to hold Defendant liable for services for which it had never been on notice that it must pay, especially given the express terms of the agreement. Because Plaintiffs succeeded in fulfilling the express terms of the agreement, Defendant's retention of the New Holland products customer base does not rise to the level of "inequitable" conduct.

## VI.

In Count Six, Plaintiffs claim that Defendant tortiously interfered with their prospective economic advantage and the contractual relationships between Tractor and Farm Supply and prospective purchasers of Ford–New Holland products, Tractor and Farm Supply and its employees, and Laura Vance and Tractor and Farm Supply.

Defendant cites Kentucky and federal case law to support its assertion that a tortious interference claim cannot be predicated upon an act which involves no more than the exercise of an otherwise absolute legal right. *See Circo v. Spanish Gardens Food Mfg. Co., Inc.*, 643 F.Supp. 51, 56 (W.D.Mo.1985) (involving contracts terminable at will and a unilateral refusal to deal); *NCAA v. Hornung*, 754 S.W.2d 855 (1988) (holding that a claim for tortious interference with contract is not allowed unless the tortfeasor improperly interfered with a prospective contractual relationship).

Defendant's actions do not necessarily involve the exercise of an otherwise absolute legal right, however. Plaintiffs charge that prior to its "illegal non-renewal" of their dealership agreement, Defendant attempted, through improper means, to force Plaintiffs' resignation and induced or assisted some of Plaintiffs' long-term employees to resign and seek employment with Ben and Elmer's.

Generally, recruitment of at-will employees cannot be the basis of a claim of tortious interference with contract. *Restaurant Associates Industries, Inc. v. Anheuser Busch, Inc.*, 422 F.Supp. 1105 (S.D.N.Y.1976) (*citing* Prosser, *Law of Torts*, § 129 at 946 (4th ed. 1971) and Rest.2d Torts, § 768 (noting that the basic rule is that a competitor is privileged to induce the termination of at-will employees)). The "competitor privilege" may be defeated, however, if the actor employed improper means or evinced improper motivation when recruiting at-will employees.

■ Because there may be a material dispute about whether Defendant tortiously interfered with Plaintiffs' contractual relationships with several of its employees, the Court concludes that summary judgment of this issue is inappropriate at this time, but the Court's conclusion applies only to this issue.

■ With respect to Plaintiffs' allegations that Defendant interfered with the contractual relationships between Tractor and Farm Supply and Laura Vance and between Tractor and Farm Supply and prospective purchasers of its products, summary judgment *is* appropriate. Defendant, the manufacturer of New Holland equipment, would have interfered with its *own* prospective economic benefit by tortiously interfering with Plaintiffs' other contractual relationships and with their prospective economic advantage in general. Moreover, the facts in dispute, even as they are alleged by Plaintiffs, sound in contract, not tort. If Defendant's unlawful non-renewal of the dealership agreement interfered with Plaintiffs' prospective economic advantage, those damages properly are recoverable as a contract action.

### VII.

■ Count Seven of Plaintiffs' Complaint asserts that Plaintiffs did not have enough time to recoup their investment in the franchise with Ford–New Holland. According to Plaintiffs, Defendant decided not to renew the agreement before they had time to recoup their expenses for a new computer system and on-line charges, their move to a new facility, and training for employees, among other things.

■ The claim of recoupment implies a minimum term in an at-will agreement, which is defined as the length of time in which a dealer can reasonably be expected to recoup its investment and holds that it is a breach of contract if the agreement is *terminated* before that time. *Leibel v. Raynor,* 571 S.W.2d 640 (Ky.App.1978) (noting also that what constitutes a "minimum term" is a question of fact); *Pharo v. Stahl,* 782 S.W.2d 635 (Ky. App.1989) (holding damages recoverable for failure to give reasonable notice of termi-

nation of at-will distribution contract were limited to those elements directly relating to lack of notice and the lost opportunity for *nonterminating* party "to put his house in order") (emphasis added). The questions that naturally follow is whether a recoupment claim encompasses a continuing investment or merely a party's initial investment and whether a recoupment claim is viable for a non-renewal.

Plaintiffs argue that a claim for recoupment properly is not limited to "start-up costs" but includes continuing investment as well. This argument is not without its supporters. *See, e.g., Sofa Gallery, Inc. v. Stratford Co.,* 872 F.2d 259, 263 (8th Cir.1989) (holding that Minnesota law permits recoupment damages to be recoverable for a continual investment made in the establishment and development of a dealership). However, a claim for recoupment in general, and specifically for recoupment of continual expenses, is usually viable only when a manufacturer terminates an at-will dealership agreement without reasonable notice. *Id.* at 262. In such a case, what constitutes reasonable notice is determined by whether the manufacturer notified the dealer of its intent to terminate in sufficient time for a reasonable dealer to recoup his losses. *See id.*

In the case at bar, Defendant did not "terminate" its agreement and its notice of its intent not to renew strictly complied with the terms of its agreement, which would seem to indicate that it was reasonable. Plaintiffs claim, however, that they recently had expended a good deal of money to develop the distributorship and that six months notice of non-renewal was insufficient, particularly in light of the unexpected direct competition in their trade area from Ben and Elmer's, and should be viewed as a termination.

Since Defendant may have improperly violated the terms of the Franchise Law by failing to renew Plaintiffs' agreement, the Court need not decide whether a non-renewal is equivalent to a termination. For purposes of evaluating whether summary judgment should be granted for this claim, the terms may be considered equivalent. According to Kentucky law, whether notice of

termination of an at-will sales contract was reasonable is to be determined by the finder of fact unless only one legitimate inference can be drawn from the facts proven, in which case the question is one of law for the court. *Pharo Distributing Co.,* 782 S.W.2d at 638 (citations omitted). Because the Court cannot say that only one legitimate inference may be drawn from the facts, Defendant's motion is denied as to this claim. This may be open for reconsideration at the close of proof.

### VIII.

Plaintiffs' final claim is for punitive damages. Kentucky Revised Statute 411.184(2) permits recovery of punitive damages in cases involving fraud, oppression, or malice. K.R.S. 411.184(4), however, clearly states that "in no case shall punitive damages be awarded for breach of contract." Clearly, where compensatory damages are recoverable through a breach of contract claim, punitive damages are not recoverable. *See Ford Motor Co. v. Mayes,* 575 S.W.2d 480 (Ky. App.1978). Consequently, the Court will sustain Defendant's Motion for Summary Judgment for all of Plaintiffs' claims of breach of contract, but will overrule their Motion with respect to any of Plaintiffs' still-viable tort claims. For, although it seems unlikely that Plaintiffs' demand for punitive damages will be granted at trial, they may have produced enough evidence of fraud (e.g. that Defendant intentionally misrepresented, deceived, or concealed material facts known to them with the intention of causing injury to Plaintiffs) to present their case to a jury. The Court will re-evaluate this issue during trial, if necessary.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

This case is before the Court on Defendant's motion for summary judgment. The Court has issued a Memorandum Opinion. Being otherwise sufficiently advised,

IT HEREBY ORDERED that the Court shall apply Michigan law to Plaintiffs' contract claims and Kentucky law to their other claims.

IT IS FURTHER ORDERED that Defendant's motion is DENIED as to Plaintiff's contract and their claims under the Michigan Franchise Investment Law.

IT IS FURTHER ORDERED that Defendant's motion is SUSTAINED as to Plaintiffs' claim of promissory or equitable estoppel.

IT IS FURTHER ORDERED that Defendant's motion is SUSTAINED as to Plaintiffs' claim of unjust enrichment.

IT IS FURTHER ORDERED that Defendant's motion is DENIED as to Plaintiffs' claim of tortious interference with its contractual relationships between Tractor and Farm Supply and its at-will employees (other than Laura Vance), but is SUSTAINED as to all other claims of tortious interference with contractual relationships and prospective economic advantage.

IT IS FURTHER ORDERED that Defendant's motion is DENIED as to Plaintiffs' claim of recoupment.

IT IS FURTHER ORDERED that Defendant's motion is DENIED as to Plaintiffs' claim for punitive damages.