**RES–CARE, INC., Plaintiff,**

v.

**OMEGA HEALTHCARE INVESTORS, INC., Defendant.**

**CIVIL ACTION NO. 3:95CV–42–S.**

United States District Court,
W.D. Kentucky,
at Louisville.

May 30, 2001.

David B. Tachau, Benjamin Cadden Fultz, Tachau, Maddox, Hovious & Dickens, Mary R. Harville, Michael W. Oyler, Trevor L. Earl, Reed, Weitkamp, Schell, Cox & Vice, David S. Waskey, Louisville, KY, for plaintiff.

Phillip W. Collier, Michael T. Kanovitz, Padma G. Hinrichs, Stites & Harbison, Louisville, KY, for defendant.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the Court on the motion of the Defendant, Omega Healthcare Investors, Inc. ("Omega"), to dismiss

Counts II (Intentional or Negligent Misrepresentation), III (Promissory Estoppel), and IV (Unjust Enrichment) of the First Amended Complaint for failure to state a claim. For the reasons set forth below, we will grant the Defendant's motion by a separate order.

## FACTS and PROCEDURAL BACKGROUND

The dispute between these parties arose from four Lease agreements entered into by the Plaintiff, Res–Care, Inc. ("Res–Care"), and Omega's predecessors in interest, Angell Real Estate Company ("Angell") and Health Equities Properties, Inc. ("HEP"). These Leases contained a clause, ("¶ 23"), which required the parties to enter into a good faith renegotiation once Res–Care made a *bona fide* determination that changes in the Medicaid law would materially and adversely affect the economic feasibility of the Leases and informed Omega of that fact.

Sometime after the execution of the Leases, Indiana made some adjustments to its Medicaid reimbursement methodology the legality of which was challenged in *Indiana State Board of Public Welfare v. Tioga Pines Living Centers, Inc.*, Case No. 30501–9208–CU–00621 (*"Tioga Pines"*). According to Res–Care, these adjustments triggered the ¶ 23 requirement that the parties renegotiate the Leases in good faith. Res–Care also claims that once it informed HEP of this fact, HEP agreed that it had a duty to renegotiate but requested a postponement so that the Indiana courts could reach a final decision in *Tioga Pines*. The adjustments in Indiana law were upheld by *Tioga Pines*. However, the two parties never renegotiated the Leases, and Res–Care subsequently sued Omega claiming that it breached the agreements.

On December 17, 1999, this Court granted Omega's motion for summary judgment and dismissed the complaint in its entirety.

On March 13, 2000, we reconsidered an aspect of our ruling and reinstated the portion of the complaint which alleged that Omega breached the Leases by not entering into good faith negotiations. Subsequent to this ruling, Res–Care amended its complaint to add three causes of action which sound in tort and are the subject of this motion to dismiss.

## DISCUSSION

In determining a motion to dismiss, we must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994)). The Sixth Circuit expounded on this standard in the case of *Andrews v. Ohio,* 104 F.3d 803 (6th Cir.1997).

> This Court must . . . determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. A complaint need only give "fair notice of what plaintiff's claim is and the grounds upon which it rests." A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."

*Id.* at 805 (quoting *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993))(internal citations omitted).

### Choice of Law

The parties debate whether Indiana or Kentucky substantive law should be ap-

plied to the three claims at issue in this motion. The Leases state that they shall be governed by Indiana law, but Res–Care argues that, because the three counts at issue are not based upon contractual provisions, the choice of law clause should not control. Instead, it claims that Kentucky's choice of law rules favor choosing the forum law for all tort claims. *See Foster v. Leggett,* 484 S.W.2d 827, 829 (Ky.1972). While these facts and arguments present us with an interesting question, we decline to answer it because we find that Omega is entitled to have its motion granted under either scenario.

Res–Care does not dispute that, under Indiana law, Counts III and IV are subsumed into its breach of contract claim; *see Bright v. Kuehl,* 650 N.E.2d 311, 316 n. 7 (Ind.App.1995)(unjust enrichment); *Vickers v. Henry County Savings & Loan Ass'n,* 827 F.2d 228, 233 (7th Cir.1987)(applying Indiana law)(promissory estoppel); or that Count II is deficient for reasons similar to those described below, *see Biberstine v. New York Blower Co.,* 625 N.E.2d 1308, 1315 (Ind.App.1993). Therefore, we proceed only to discuss the reasons for our decision under Kentucky substantive law and leave the extrapolation of Kentucky choice of law rules for another day.

### Misrepresentation

Count II of Res–Care's complaint alleges that Omega "intentionally or negligently supplied false information to Res–Care in regard to its commitment to renegotiate the Leases, . . . ." First Amend. Compl. ¶ 22. Res–Care claims that these false representations render Omega liable to it for either negligent or intentional misrepresentation. Omega replies that this Count II must be dismissed because it, among other deficiencies, fails to allege the necessary elements of misrepresentation.

▪ In order to state a claim for misrepresentation in Kentucky, a plaintiff must allege (1) that the defendant made a false statement; (2) regarding a material fact; (3) that the defendant knew the statement was false; (4) that the defendant intended to deceive the plaintiff; (5) that the plaintiff, in fact, did reasonably rely upon the deception; and (6) that the plaintiff suffered damages as a result. *Kentucky Laborers Dist. Council v. Hill & Knowlton,* 24 F.Supp.2d 755, 771 (W.D.Ky. 1998). Another requirement, under Kentucky law, is that the misrepresentation pertain to present or preexisting facts, not future events or actions. *Hunt Enter., Inc. v. John Deere Industrial Equip.,* 18 F.Supp.2d 697, 702 (W.D.Ky.1997)(*citing Schroerlucke v. Hall,* 249 S.W.2d 130, 131 (Ky.1952)). Res–Care argues that HEP's alleged misrepresentations satisfy this rule because they related to present facts or intentions.

▪ First, Res–Care alleges that HEP misrepresented that ¶ 23's obligations had been triggered which, they argue, was a present fact. However, this alleged statement is not, itself, a factual assertion. Paragraph 23's obligations were contingent upon two conditions: (1) a change in the Federal Medicare Program law reducing Res–Care's reimbursement, and (2) Res–Care's *bona fide* determination that that reduction would materially affect the economic feasibility of the Leases. Thus, Res–Care's allegation depends upon a determination that HEP misrepresented the truth regarding these conditions. While the first of these conditions is arguably factual, the second appears to be, at best, a legal opinion or determination and is something entirely within the knowledge and determination of Res–Care. An opinion cannot be the basis of a claim of misrepresentation under these circumstances. *See* Restatement (Second) of Torts § 542, *cited with approval in Johnson v. Lowery,* 270 S.W.2d 943, 945 (Ky.1954). Regardless, it

would be impossible for Res–Care to rely justifiably upon HEP's statement regarding a determination which HEP could not know and which Res–Care was contractually bound to make on its own accord.

■■ Second, Res–Care alleges that HEP misrepresented that it would renegotiate the Leases in good faith and that this amounted to a present intention. However, a statement of a present intention to act in the future is only actionable when it induces a plaintiff to enter into a contract. *Schroerlucke v. Hall,* 249 S.W.2d 130, 131 (Ky.1952)(Fraud exists where one makes a "false representation of an existing intention to do certain things, made for the purpose of inducing another to enter into a contractual relation with him."). In this case, the contract already existed, and HEP's alleged promise related directly to the terms of that contract. Thus, the general rule noted in *Hunt* regarding promises of future conduct applies. Therefore, neither of the statements alleged to have been made by HEP rises to the level of actionable fraud.

### *Promissory Estoppel*

Count III of Res–Care's complaint alleges that Res–Care reasonably relied to its detriment upon HEP's promises that it would renegotiate the Leases in good faith. First Amend. Compl. ¶ 26. Omega claims that Count III should be dismissed because (1) promissory estoppel claims are subsumed into the obligations of the Leases, and (2) Res–Care has not sufficiently alleged the elements of a promissory estoppel claim. Res–Care responds that these promises are independent of the duties in the Leases and that the complaint sufficiently alleges the necessary elements.

■■ The elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise. *Meade Const. Co. v. Mansfield Commercial Elec.,* 579 S.W.2d 105, 106 (Ky.1979). In its brief, Res–Care identifies three assertions made by HEP which it alleges amount to actionable promises: (1) that ¶ 23 had been triggered by the changes in Indiana law; (2) that HEP would not later argue that ¶ 23 had not been triggered; and (3) that HEP would enter into good faith renegotiations after the resolution of *Tioga Pines.* However, these identified assertions are not sufficient to maintain a cause of action for promissory estoppel.

■ The first alleged assertion, that ¶ 23 had been triggered, is not a promise. As explained in the above sections, it amounts to an assertion of fact or a legal conclusion. However, these possibilities are not sufficient to satisfy the first requirement of Res–Care's claim.

The second alleged promise, that HEP would not contest the triggering of ¶ 23, is not alleged in the complaint or in the affidavit of Ronald G. Geary. Thus, Res–Care improperly presents it to the Court in its Response to the motion to dismiss. Even if it were included in the complaint, it would be insufficient for the same reasons stated below.

■ The third alleged promise, that HEP would enter into good faith negotiations after the conclusion of *Tioga Pines,* does not amount to a promise independent of the contractual duties. If Res–Care is correct in its assertion that ¶ 23 was triggered, then Omega was required by the Leases to renegotiate in good faith. A promise to renegotiate made after the formation of the contract mirrors the exact requirements of the Lease and does not amount to an independent promise upon which Res–Care could rely. *See Tractor &*

 

*Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F.Supp. 1198, 1205 (W.D.Ky.1995)(Promissory estoppel "cannot be the basis for a claim if it represents the same performance contemplated under a written contract."). Alternatively, if Res–Care is incorrect in its assertion that ¶ 23 was triggered, then the Defendant had no duty to renegotiate the Lease and Res–Care had no right to reduce its rent payments or to walk away from the Leases. The fulfilment of these contractual obligations cannot amount to detrimental reliance, and therefore, Res–Care cannot satisfy the elements of promissory estoppel.

### Unjust Enrichment

█ Count IV of Res–Care's First Amended Complaint alleges that it would be unjust and inequitable for Omega to retain the benefit of Res–Care's excessive rent payments after Omega's failure to engage in a good faith renegotiation. However, "the doctrine of unjust enrichment has no application in a situation where there has been an explicit contract which has been performed." *Tractor & Farm Supply*, 898 F.Supp. at 1206 (*citing Codell Construction Co. v. Commonwealth*, 566 S.W.2d 161 (Ky.App.1977)). If Omega did not breach the contract, then Res–Care was obligated to make rent payments and cannot claim that these payments were excessive. On the other hand, if Omega breached the Leases by not renegotiating in good faith, then Res–Care had a right to terminate the Leases or to reduce its rent obligation. However, these rights are contingent directly upon a finding of breach on the part of Omega and identical to those available as remedies for that breach. Thus, this claim is simply a breach of contract claim in other clothing and cannot be maintained independently.

### CONCLUSION

For the reasons explained above, the motion of the Defendant for partial dismissal will be granted by a separate order entered this date.