[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 04, 2002
THOMAS K. KAHN
CLERK

_____

Nos.  00-14798 and 00-16106
_____

D. C. Docket No. 99-08286 CIV-DTKH

MAYTRONICS, LTD.,

Plaintiff-Counter-
defendant-Appellee,

versus

AQUA VAC SYSTEMS, INC.,

Defendant-Counter-
claimant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(January 4, 2002)**

Before EDMONDSON and CARNES, Circuit Judges, and MUSGRAVE[*], Judge.

_____

[*] Honorable R. Kenton Musgrave, Judge, U.S. Court of International Trade, sitting by
designation.

MUSGRAVE, Judge:

Aqua Vac Systems, Inc. ("Aqua Vac") appeals from the district court's entry of final judgment on a jury verdict finding it liable for $707,266.00 in damages resulting from its failure to give adequate notice to Maytronics, Ltd. ("Maytronics") prior to terminating a distributorship agreement between the two companies. Aqua Vac also appeals the district court's award of $91,081.71 in pre-judgment interest. For the reasons that follow, we affirm the judgment of the district court.[1]

## I. BACKGROUND

On November 6, 1995, Maytronics, an Israeli company which manufactures automatic wall-climbing swimming pool cleaners, entered into a distributorship agreement with Aqua Vac, a Florida corporation which markets pool cleaning products to retail stores. The agreement provided that Maytronics would manufacture a robotic pool cleaner to be sold under the Aqua Vac label based on a model that Maytronics sold under its own label. On November 23, 1996, the

---

[1] Aqua Vac also argues, in Case No. 00-16106-DD, that the district court improperly awarded attorneys' fees to Maytronics pursuant to Fla. Stat. § 768.79(6)(b). At oral argument we expressed our belief that the district court was correct, provided that Maytronics prevailed on the issues concerning the award of damages and pre-judgment interest, which are the subject of Case No. 00-14798-DD. Since we affirm the district court's entry of final judgment on these issues, we also affirm its award of attorneys' fees.

parties entered into an addendum which provided that the agreement would continue until October 15, 1997, and would automatically renew for another yearly term so long as Aqua Vac purchased larger quantities in successive years. The agreement continued for three years with Aqua Vac purchasing 501 units in 1995-96, 511 units in 1996-97, and 1739 units in 1997-98.

In May 1997, Aqua Vac began secretly developing its own robotic pool cleaner based on the Maytronics model. Appellee's Br. at 5 (citing R6:70-71). On July 21, 1998, representatives from Maytronics and Aqua Vac met with representatives from Leslie's Poolmart, Inc. ("Leslie's"), a large retailer of pool supplies and equipment, and discussed Leslie's projected sales for 1999, which included 4,000 to 5,000 of the robotic pool cleaners. Following this meeting, Leslie's informed Aqua Vac that it would not buy any products manufactured by Maytronics because it could not fill orders fast enough. Unaware of this, Maytronics began ordering parts to prepare for increased business based on Leslie's projected sales.

Despite the fact that it was working on its own product and had received notice that Leslie's would not buy Maytronics' products, Aqua Vac continued to correspond with Maytronics for several months regarding business for the 1999 season. At trial, Aqua Vac's president testified that he maintained this relationship

3

in order to "keep my options open." R8: 573. On September 4, 1998, Aqua Vac entered into a new contract with Leslie's to supply at least 4,000 units of its newly developed pool cleaner. Nevertheless, Aqua Vac did not inform Maytronics that it was terminating their pre-existing agreement until October 28, 1998, when Aqua Vac publicly unveiled its own robotic pool cleaner at a national trade show for the pool industry.

Maytronics brought this action in the United States District Court for the Southern District of Florida alleging: Count I, breach of contract during the period from October 16, 1997, to October 15, 1998; Count II, breach of contract during the period from October 16, 1998, to October 15, 1999; Count III, promissory estoppel;[2] and Count IV, breach of the implied covenant of good faith and fair dealing. Prior to trial, the court ruled that the agreement between Maytronics and Aqua Vac was, as a matter of law, terminable-at-will. R3: 85. At the close of Maytronics' case the court ruled that (1) Aqua Vac had breached the agreement, (2) by operation of law the agreement was extended for a reasonable time period after the date of termination, and (3) Aqua Vac was liable for damages during this period. R8: 654-655. It was left to the jury to determine how much

---

[2] Count III was subsequently withdrawn by Maytronics. R8: 656.

notice Aqua Vac should have given Maytronics and the amount of damages Maytronics was entitled to recover.

The jury found that six months was a reasonable notification period and that Maytronics had suffered $707,266.00 in damages[3] under Count II of the Complaint as a result of Aqua Vac's failure to give reasonable notice.[4] Subsequently, Maytronics moved for entry of judgment on the jury verdict and for pre-judgment interest. Aqua Vac moved for judgment as a matter of law, or in the alternative for a remittitur or new trial, arguing, *inter alia*, that Maytronics was not entitled to recover lost profits because the contract was terminable-at-will. The district court denied Aqua Vac's motion, granted Maytonics' motion, and entered final judgment of $707,266.00 in damages and $91,081.71 in pre-judgment interest for Maytronics.

Aqua Vac subsequently brought this appeal contending that the district court erred by (1) entering final judgment on the award of lost profits and (2) awarding pre-judgment interest when the jury verdict did not set a date on which the

---

[3] Maytronics presented evidence at trial that it suffered losses for unusable parts, interest expenses, and lost profits. The jury award was not itemized, but by virtue of the amounts alleged for each of these categories, some amount of lost profits was necessarily included in the jury award.

[4] The jury also awarded Maytronics $350,718.00 in damages under Count IV, but since this was an alternative theory of recovery, R9: 755-56, the court only entered judgment on the award for Count II. No damages were awarded under Count I.

damages were liquidated.

## II.  STANDARD OF REVIEW

The district court's denial of Aqua Vac's motion for judgment as a matter of law and entry of final judgment for Maytronics on the award of lost profits is reviewed *de novo*.  *Beaver v. Rayonier, Inc.,* 200 F.3d 723, 726 (11th Cir. 1999) (citation omitted), *cert. dismissed,* 529 U.S. 1095 (2000).  The district court's award of pre-judgment interest is reviewed for abuse of discretion.  *Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte, GmbH*, 141 F.3d 1434, 1446 (11th Cir. 1998) (citations omitted).

## III.  DISCUSSION

### A. Lost Profits

Aqua Vac argues that when a terminable-at-will contract is terminated without notice, the injured party is entitled to recoup its "out-of-pocket" expenses (*e.g.* the cost of unuseable parts), but not any lost profits.  *See* Appellant's Initial Br. at 13.  The theory behind this proposition is that neither party has a right to expect future profits since the contract may be terminated at any time.  *See id.* at 19 (quoting *Dalton Properties, Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984)).

6

Therefore, Aqua Vac contends that damages flowing from the failure to give notice are recoverable, but damages, such as lost profits, flowing from the termination of the agreement are not. *See id*. at 13.

This appeal presents an issue of first impression under Florida's Uniform Commercial Code ("UCC"). The Florida UCC provides that "[t]ermination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party." Fla. Stat. § 672.309(3). Although Aqua Vac cites two decisions by the Florida Court of Appeals in support of its argument, these cases differ from the present case on several key points. In *Centro Nautico Representacones Nauticas, LDA. v. International Marine Co-op., Ltd.*, 719 So. 2d 967 (Fla. Dist. Ct. App. 1998), the court found that there was no contract because the agreement violated the statute of frauds; therefore, the aggrieved party was not even entitled to reasonable notice. *Id*. at 969. Furthermore, the lost profits sought by the distributor in that case covered "a period of 5 to 7 years in the future," *id.*, which unquestionably exceeds the reasonable notice required by the UCC. In *Pick Kwik Food Stores, Inc. v. Tenser*, 407 So. 2d 216 (Fla. Dist. Ct. App. 1981), the court found that an agreement between the operator of a convenience store and a gasoline retailer giving the latter the right to sell gasoline on premises leased by the convenience store was "void

from the beginning for lack of consideration or . . . lack of mutuality [of obligation]." *Id.* at 218. Moreover, this was not a UCC case, and although the court found that lost profits were not recoverable under the agreement, there was no mention of whether notice was required. *Id.*

Aqua Vac also cites numerous cases from other jurisdictions, but a careful reading of these cases leads us to conclude that they address the attempted recovery of lost profits for an extended period of time beyond a reasonable notice period. In *Sofa Gallery, Inc. v. Stratford Co.*, 872 F.2d 259 (8th Cir. 1989), which Aqua Vac contends is "particularly on point," Appellant's Initial Br. at 16, Sofa Gallery sued for damages resulting from, among other things, lack of notice prior to the termination of its distributorship by Stratford. The district court entered summary judgment for Stratford, and the Eighth Circuit affirmed, based on the finding that Sofa Gallery was attempting to recover "lost future profits resulting from the termination rather than damages for [the] allegedly unreasonable notice." *Id.* at 263. Similarly, in *Pharo Distributing Co. v. Stahl*, 782 S.W.2d 635 (Ky. Ct. App. 1989), the court reversed and remanded a jury award of damages to Stahl, whose distributorship was terminated without notice, because the proof of damages he presented was not limited to the period of time necessary to "put his house in order," but included the value of the distribution rights (*i.e.* the profits he could

8

expect to earn from the distribution rights in the future). *Id.* at 639. On remand

Stahl was "permitted to establish his damages incident to the failure to receive

reasonable notice" with the amount "limited to those [damages] incurred during the

time span of what would have been 'reasonable notification.'" *Id.*

Since the Florida UCC requires reasonable notification prior to the

termination of a terminable-at-will contract, it follows that the parties have an

expectation that the contract will not end without such notification, as it did here.

In *Sierra Wine and Liquor Co. v. Heublein, Inc.*, 626 F.2d 129 (9th Cir. 1980), the

Ninth Circuit affirmed the district court's determination that Sierra should have

been given six months notice before its distributorship agreement was cancelled,

and was therefore entitled to lost profits for this notice period. The court noted that

this "made Sierra whole" and "placed [it] in the same position it would have been

but for [the manufacturer's] failure to give reasonable notice." *Id.* at 132. This

conclusion is consistent with the general provision in Florida's UCC that "[t]he

remedies provided by this code shall be liberally administered to the end that the

aggrieved party may be put in as good a position as if the other party had fully

performed." Fla. Stat. § 671.106(1). Therefore, we hold that when a party is not

given reasonable notice prior to termination of a terminable-at-will contract, under

Florida law it is entitled to recover the profits it would have made from the contract

during the notice period. Accordingly, we affirm the district court's entry of final judgment for Maytronics on the award of damages.

### B. Pre-Judgment Interest

Aqua Vac argues that the district court abused its discretion in awarding pre-judgment interest because the jury verdict did not fix a date on which the damages became due. Appellant's Initial Br. at 26. The district court held that "[b]y their verdict, the jury found the reasonable notification period to be six months, thereby establishing April 28, 1999 – the date six months after the date defendant gave plaintiff notice that is [sic] was terminating the parties' contract – as the date damages became liquidated. See generally Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 215 (Fla. 1985)." R4: 130. In *Argonaut* the Florida Supreme Court affirmed the rule that "a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." 474 So. 2d at 214 (quoting *Bergen Brunswig Corp. v. State Department of Health and Rehabilitative Services*, 415 So. 2d 765, 767 (Fla. Dist. Ct. App. 1982)). We agree with the district court's conclusion that the jury verdict had the effect of establishing a date on which the damages became due. Therefore, we find no abuse of discretion in its award of pre-judgment interest to Maytronics.

10

## III. CONCLUSION

For the foregoing reasons, the district court's entry of final judgment on the jury award with pre-judgment interest, R4: 132, and its order entering final judgment on attorneys' fees and costs, R4: 154, are **AFFIRMED**.