Kevin **SWIERCZYNSKI**, Plaintiff,

v.

**ARNOLD FOODS COMPANY, INC.,** a Delaware corporation, d/b/a Best Foods Baking Company, as successor to Bestfoods Baking Group; Entenmann's, a Delaware corporation, d/b/a S.B. Thomas, Inc.; and Bestfoods Baking Distribution Company, a Delaware corporation, Defendants.

No. 01–70455.

United States District Court, E.D. Michigan, Southern Division.

April 21, 2003.

Alan D. Penskar, Smith, Harris, Flint, MI, for Plaintiff.

Craig M. Halseth, Honigman, Miller, Bingham Farms, MI, David A. Ettinger, Honigman, Miller, Detroit, MI, for Defendants.

### OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Exclude Plaintiff's Damage Estimate and for Summary Judgment on Damages. The Plaintiff has responded and the Defendant has replied to the response. The Court finds that both parties have had the opportunity to argue the admissibility of Plaintiff's Expert Witness Report and that the facts and legal arguments are adequately presented in the parties' briefs. Accordingly, the Court finds that the record before the Court is adequate and that the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D.MICH. LR 7.1(e)(2) and *Jahn v. Equine Services, PSC,* 233 F.3d 382, 393 (6th Cir.2000), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion to Exclude Plaintiff's Damage Estimate is DENIED IN PART and GRANTED IN PART; furthermore, Defendants' Motion for Summary Judgment on Damages is DENIED.

### II. BACKGROUND

Plaintiff is a former distributor of the Defendants' bakery products in the Jackson, Michigan, area. Plaintiff distributed Defendants' products from sometime in the early 1990s until the parties' business relationship terminated in August 2000. From March 27, 1995, until the termination of the business relationship, the relationship between the parties was governed by an Independent Distributor Agreement (the "Agreement"). *See* Independent Distributor Agreement; Plaintiff's Resp. Br. Ex. 3. This Agreement was entered into between Plaintiff Kevin Swierczynski and Best Foods Baking Group. The Agreement set out the parties' rights and obligations, and forms the basis of the Plaintiff's present action. The Plaintiff alleges that the Defendants terminated the Independent Distributor Agreement in breach of that Agreement and have thereby caused injury to the Plaintiff.

Plaintiff seeks damages, in part, for lost profits and lost equity value arising from the Defendants' alleged termination of the Agreement. The Plaintiff intends to prove his damages by relying upon an Expert Witness Report (the "Report") prepared by Plaintiff's Expert Witness Mr. Norman K. Baczkiewicz. Baczkiewicz's Report es-

timates Plaintiff's damages to be $742,236. This amount is made up of three components. The first component is made up of the lost value of Plaintiff's non-equity interest in the Agreement as an independent contractor. Specifically, this component is intended to measure Plaintiff's lost profits in his capacity as a non-equity independent contractor. The second component is made up of Plaintiff's equity interest as an independent contractor. This component is intended to measure Plaintiff's lost profits in his capacity as an equity independent contractor. Lastly, the third component is made up of Plaintiff's equity interest as owner-operator. According to Baczkiewicz, this component is intended to measure the lost value of the Plaintiff's equity investment in the distribution route.

To place a dollar amount on these three components, Baczkiewicz first established Plaintiff's year 2000 gross and net profits, and determined the rate of growth of Plaintiff's gross and net profits from 1996–2000.[1] Then, by applying that rate of growth to Plaintiff's 2000 numbers, Baczkiewicz projected these numbers out to Plaintiff's retirement. Having estimated Plaintiff's lost profits for each year leading up until retirement, Baczkiewicz then applied a discount rate to establish the present value of Plaintiff's lost profits for those years. After this present value was determined, Baczkiewicz divided this amount into the three components that make up his estimation of Plaintiff's damages. To place a dollar amount on each of these three components, Baczkiewicz first divided the present value of Plaintiff's lost profits between equity and non-equity interests.[2] Baczkiewicz then determined the value of the owner-operator equity interest by comparing Plaintiff's business to the value of similar businesses, and subtracted this amount from the equity interest portion of Plaintiff's estimated lost profits to determine the independent contractor equity interest.[3] Baczkiewicz's Expert Witness Report provides the following:

*OPINION*

**Lost Value**

Based upon my review of the information listed in Attachment B, I have the following opinion of lost value or damages:

| | |
|---|---:|
| Non-equity 45% interest (independent contractor) | $ 334,006 |
| Equity 55% interest (independent contractor) | 343,355 |
| Equity 55% interest (owner operator) | 64,875 |
| Total | $ 742,236 |

*See* Baczkiewicz Engagement Report, Att. A; Defendants' Br. in Support, Ex. 4. Baczkiewicz's Expert Witness Report is the second such report that he prepared. Initially, Baczkiewicz had prepared a preliminary report that relied upon the same methodology and that came to the same conclusions as the final Expert Witness Report. Baczkiewicz prepared the preliminary report at the request of Plaintiff to estimate damages for settlement negotiation purposes. After settlement negotia-

---

1. Baczkiewicz relied upon Plaintiff's tax returns for 1996 through 1999, and Plaintiff's gross and net income up to the point of the alleged termination of the Agreement in 2000.

2. Plaintiff had indicated to Baczkiewicz that his interest was 45% non-equity and 55% equity. Baczkiewicz applied this apportionment to the present value of Plaintiff's total lost profits.

3. As stated above, Baczkiewicz gave Plaintiff's equity interest two components. The first component was the value of business to Plaintiff as an independent contractor. The second component was the value of the equity interest to Plaintiff as owner-operator, in essence, the market value of Plaintiff's investment.

tions ended, Baczkiewicz changed the preliminary report into a final Expert Witness Report, to be used by Plaintiff for trial purposes.

The Defendants have filed a Motion to Exclude Plaintiff's Damage Estimate and for Summary Judgment on Damages. With this Motion, and pursuant to FED. R. EVID. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Defendants seek to exclude Baczkiewicz's damages estimate because, according to the Defendants, the final report is unreliable since it is really just a preliminary report, unsuitable for litigation purposes. In addition, the Defendants also seek to exclude any testimony by the Plaintiff himself regarding damages. If this relief is granted, the Defendants ask that the Court grant the Defendants summary judgment as to the issue of damages since, the Defendants argue, the Plaintiff would have presented no admissible evidence to prove his claims of lost profits and lost business value.

In response, the Plaintiff takes issue with the fact that the Defendants have brought out that the Expert Witness Report was originally prepared for settlement negotiations. The Plaintiff argues that reference to settlement negotiations by the Defendants violates FED. R. EVID. 408, and that the Defendants' motion should, therefore, be struck. In addition, the Plaintiff argues that this is an issue that is best left to the jury to decide.

## III. ANALYSIS

### A. Defendants' Motion to Exclude Plaintiff's Damage Estimate

The Defendants argue that the Expert Witness Report prepared by Plaintiff's Expert Witness Norman K. Baczkiewicz is inadmissible under the standards set forth by FED. R. EVID. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). FED. R. EVID. 702 provides:

**Rule 702. Testimony by Experts**

█ If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. In *Daubert,* the Supreme Court held that FED. R. EVID. 702 imposed upon a district court a special obligation to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786. "This entails a preliminary assessment of whether the reasoning or methodology underlying the [expert's] testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786. In *Kumho,* the Supreme Court extended *Daubert's* holding to expert matters other than matters solely considered "scientific." *See Kumho,* 526 U.S. at 152, 119 S.Ct. 1167. In addition, *Kumho* clarified that where the reasonableness of a particular methodology is challenged, this Court is to evaluate not the reasonableness in general of that particular methodology, but the reasonableness of using that methodology to draw a conclusion regarding the "particular matter to which the expert testimony is direct-

ly relevant." *Id.* at 154, 119 S.Ct. 1167 ("The relevant issue was whether the expert could reliably determine the cause of *this* tire's separation."). This Court must ensure not that the expert's testimony is known to a "certainty" but that the testimony is based on "the same level of intellectual rigor that characterizes the practice in the relevant field." *Id.* at 152, 119 S.Ct. 1167.

■ In the present case, and as described above, the Plaintiff intends to rely upon Baczkiewicz's Report to prove his claim of damages. Specifically, the Plaintiff intends to use the Report to prove his amount of lost profits and the value of the lost equity interest in the distributorship as a result of the Defendants' alleged conduct. Accordingly, and as a part of its gatekeeper function, this Court must determine whether the Report is both reliable and relevant to help determine the amount of lost profits and lost business value in this particular case. The Defendants do not contest relevance, but instead, attack the methodology of the Report and claim that the Report is unreliable because (1) the Expert himself has purportedly admitted the Report is inadequate for litigation; (2) the Report improperly utilized a "lost wages" analysis rather than a "lost profits" analysis; and (3) the Report improperly utilized two "benchmarks" in estimating lost profits and lost value. In addition, the Defendants claim that the Report is fatally flawed because it fails to take into account mitigation.

### 1. Adequacy of Report for Litigation

The Defendants first claim that the Expert Witness Report is inadequate for litigation purposes. Basically, the Defendants argue that Baczkiewicz has prepared an unreliable preliminary report that was never intended to be used as an Expert Witness Report in litigation. The Defendants point out that in his deposition, Baczkiewicz conceded that he never "issued what [he] would call a preliminary evaluation or preliminary report that would actually ... be used in litigation." *See* Defendants' Br. in Support, p. 8 (quoting Baczkiewicz Dep. at 28). In addition, the Defendants point out that in filling out the preliminary report, Baczkiewicz marked several factors listed on a page entitled "Litigation Services Report List" as "not applicable." If the final Expert Witness Report were adequate for litigation purposes, Defendants argue, Baczkiewicz would have taken into consideration those "not applicable" factors and numerous other factors which Baczkiewicz either did not consider or did not fully investigate when preparing the preliminary report.[4] Lastly, the Defendants argue that the Expert Witness Report is unreliable because it was prepared in April 2001, before discovery was commenced.

■ The Plaintiff responds by protesting the Defendants' reference to the fact that the preliminary report was prepared for settlement purposes. The Plaintiff argues this violates FED. R. EVID. 408. Plaintiff considers this a procedural defect with

---

4. Defendants argue that had he done a "full engagement" report, Baczkiewicz would have taken into consideration "deposition testimony and documents produced in this case[,] ... the industry [in] which the company in question competes[,] ... the nature and history of a business, economic outlook and condition of the industry[,] ... [the] breakdown of equity revenue and non-equity revenue[,] ... new customers and what each customer actually generates[,] ... where we are delivering our good[s] and actually what revenue we are getting per customer or per stop[,] ... what the growth trends were[,] ... where sales were going per stop[,] ... which products [were] expanding and which were not." *See* Defendants' Br. in Support, p. 9 (quoting Baczkiewicz Dep. at 26–27, 31–32, 34–35).

the Defendants' Motion and based upon this purported defect, asks that Defendants' Motion be struck. In addition, Plaintiff argues that it should not matter whether the preliminary report was originally prepared for settlement, but only whether the final Expert Witness Report can be used at trial to support the Plaintiff's damages. Plaintiff attaches Baczkiewicz's Affidavit which, Plaintiff argues, explains why the preliminary report did not have to be changed in order to be used for litigation.

The Court will first turn to whether the Defendants' Motion should be struck pursuant to Fed. R. Evid. 408 because of the Defendants' references to settlement negotiations. Rule 408 excludes evidence that a party offered to compromise a claim or actually compromised a claim, when offered to prove the validity of the claim, the invalidity of the claim, or the amount of damages. *See* Fed. R. Evid. 408; *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 50 F.3d 476, 480 (7th Cir.1995). The Plaintiff claims the Defendants' conduct is reprehensible because, Plaintiff argues, the Defendants' Motion is based upon the fact that the Expert Witness Report originated in settlement negotiations. Plaintiff himself, however, has placed the reliability of the Report in issue, and in the Court's view, misses the Defendants' point. The Defendants argue that the Report is inadequate because it is a preliminary report and does not meet Baczkiewicz's own standards for use in litigation. Regardless of the purpose for which it was originally intended, since Baczkiewicz has admitted, (according to the Defendants), that there is more that he would have done, and more that he would have considered had he intended the Report to be used in litigation, Baczkiewicz failed to "use the same level of intellectual rigor that characterizes the practice in the relevant field." *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167. The Defendants reference settlement negotiations

merely to indicate the original purpose for which the preliminary report was created. Plaintiff's argument, therefore, fails. In addition, the Court notes that if it were to accept the Plaintiff's argument on this issue, striking Defendants' Motion would not serve the purposes of Rule 408. "The exclusionary rule [of Rule 408] is designed to exclude the offer of compromise only when it is tendered as an admission of the weakness of the offering party's claim or defense, not when the purpose is otherwise." McCormick on Evidence, 196 (4th ed.1992). This is not such a circumstance and the Court, therefore, rejects the Plaintiff's argument.

Turning now to the substance of the Defendants' argument, the Court finds that Defendants' argument lacks merit. While the Defendants point out those portions of the Baczkiewicz deposition which suggest that a preliminary report prepared by Baczkiewicz will generally differ from the final report to be used in litigation, Baczkiewicz explains in his Affidavit that in this particular circumstance, the preliminary report would have had to have been changed only if discovery had produced evidence which would not support the preliminary report. *See* Baczkiewicz Aff. ¶¶ 17–18; Plaintiff's Resp. Br. Ex. 9. Since Baczkiewicz has indicated that further discovery did not warrant changing the preliminary report, the final Report to be used in litigation did not have to be changed. The Court, therefore, rejects the Defendants' argument. To the extent Defendants argue, pursuant to *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 618 (6th Cir.2001), that Baczkiewicz's Affidavit contradicts his deposition testimony and is therefore inadmissible, the Court finds that Baczkiewicz's deposition testimony describes the differences between a preliminary report and a final report generally, and Baczkiewicz's Affidavit explains why changing the preliminary report was

unnecessary in this particular instance. Accordingly, Baczkiewicz's explanatory statements are not contradictory and the Affidavit is admissible. Therefore, with respect to this issue, Defendants' Motion is DENIED.

### 2. Baczkiewicz's "Lost Wages" Analysis

 Second, the Defendants claim that the Expert Witness Report improperly used a "lost wages" analysis instead of a "lost profits" analysis, and that Baczkiewicz admitted this during his deposition. According to the Defendants, Baczkiewicz's improper use of a "lost wages" analysis resulted in the application of the wrong discount rate which inflated the damages estimate, and extended the damages projection too far into the future leading to speculative results about future damages. Specifically, the Defendants rely upon the fact that Plaintiff's Complaint actually seeks "lost future profits and/or diminished market value [of the business]" and point out that as an independent owner and operator of his distributorship, Plaintiff assumed the business risks associated with being a small business owner. *See* Defendants' Br. in Support, pp. 10–12. Defendants argue that Baczkiewicz's "lost wages" analysis failed to take into account these risks, and thereby applied the wrong discount rate and projected the damages too far into the future.

The Plaintiff responds by arguing that the "lost wages" approach is the correct approach to use in this instance. Plaintiff argues that because of the Plaintiff's specific situation, and the type of business relationship the Plaintiff had with the Defendants, the Plaintiff's damages should be evaluated within an employee/independent contractor paradigm "rather than as a free-standing business necessitating a full-blown business valuation." *See* Plaintiff's Resp. Br., p. 3. In addition, Plaintiff argues, any challenge to the methodology used by Baczkiewicz goes to weight, and the Report should be presented to the Jury.

 Plaintiff seeks lost profits resulting from the Defendants' alleged breach of the Independent Distributor Agreement. Pursuant to the Agreement's choice of law provision, this Court is to apply New Jersey law to this dispute. *See* Independent Distributor Agreement ¶ 14.5; Plaintiff's Resp. Br. Ex. 3. Under New Jersey law, " 'lost profits' signify the difference between gross income and the costs or expenses which had to be expended to produce the income." *V.A.L. Floors, Inc. & 3L Company, Inc. v. Westminster Communities, Inc.*, 355 N.J.Super. 416, 810 A.2d 625, 629 (2002). The Plaintiff is entitled to the profit that would have been realized had the contract been completed. *See V.A.L. Floors*, 810 A.2d at 629. And although New Jersey law permits "considerable speculation by the trier of fact as to damages[,]" a reasonably accurate and fair basis for the computation of alleged lost profits is required. *V.A.L. Floors*, 810 A.2d at 630. "Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits 'with a reasonable degree of definiteness.' " *Id.* at 631 (quoting *Weiss v. Revenue Bldg. & Loan Ass'n*, 116 N.J.L. 208, 212, 182 A. 891 (E & A 1936)).

Applying these principles to the present case, it cannot be said, as a matter of law, that a "lost wages" methodology cannot be applied to the facts at issue. Plaintiff's expert has used the Plaintiff's past business experience to project future lost profits by applying a growth rate derived from Plaintiff's historical business growth. This is a well accepted method to determine future lost profits. *See V.A.L. Floors*, 810 A.2d at 630. While the parties' experts disagree over the appropriate discount rate, since Baczkiewicz applied a discount

rate derived from an objective, independent, and well-established source, (i.e., the return rate for ten-year treasury bills), this is a matter that goes to weight, rather than admissibility. Defendants will have the opportunity to cross-examine Plaintiff's Expert and present contrary evidence. *See Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. Even though Defendants claim that this discount rate does not take into consideration the risks or uncertainty inherent in a small business, "it is only fair to lay that uncertainty 'at the door of the wrongdoer who altered the proper course of events.'" *V.A.L. Floors*, 810 A.2d at 632. Since the Plaintiff's expert has indicated that this particular factual setting is conducive to the lower risks of a "lost wages" discount rate, and after taking into consideration all of the foregoing, the Court finds that Baczkiewicz's use of the "lost wages" discount rate does not fail the reliability requirement of FED. R. EVID. 702. *See Kumho*, 526 U.S. at 152, 119 S.Ct. 1167. *See also* Baczkiewicz Aff. ¶ 23; Plaintiff's Resp. Br., Ex. 9 ("[T]he decision-making usually attendant with operating a business ... are [sic] not present. Therefore, the risk-free discount rate is appropriate."). Defendants' Motion to Exclude this portion of the Expert Witness Report is DENIED.

█ With respect to the projection of Plaintiff's lost profits out to Plaintiff's desired retirement age, two potential problems arise. First, as pointed out by the Defendants, Baczkiewicz indicated in his deposition that, generally, it is difficult to accurately predict economic activity twenty years into the future by relying upon the previous four years' economic activity. *See* Baczkiewicz Dep., p. 111; Plaintiff's Resp. Br., Ex. B. Defendants claim that this leads to speculation regarding Plaintiff's future damages. Defendants cite numerous cases, none of which apply New Jersey law, even though New Jersey law is to be applied pursuant to the Agreement's

Choice of Law provision. *See* Independent Distributor Agreement ¶ 14.5; Plaintiff's Resp. Br., Ex. 3. Under New Jersey law, however, this risk of uncertainty is to be borne by the party in breach. *See V.A.L. Floors, Inc.*, 810 A.2d at 632; *Monaco v. Pepperidge Farms, Inc.*, 94 N.J.Super. 39, 226 A.2d 741, 742 (N.J.Super.Ct. Ch. Div. 1967) ("If the plaintiff can prove his allegations of breach of contract, then there should be no question about his having suffered damage and he can have the benefit of the principle that once the fact of damage is established mere uncertainty as to amount will not bar recovery."). While Plaintiff's expert may generally only project a lost profits analysis five years into the future, *see* Baczkiewicz Dep. p. 95; Plaintiff's Resp. Br. Ex. B, since the Plaintiff's expert has indicated that a "lost wages" analysis is appropriate in this instance, *see* Baczkiewicz Aff. ¶ 25; Plaintiff's Resp. Br., Ex. 9, and after taking into consideration New Jersey law regarding damages, the Court finds that Baczkiewicz's projection of damages out to Plaintiff's retirement age does not render his estimate of damages unreliable. Therefore, with respect to this issue, Defendants' Motion is DENIED.

█ Also with respect to the projection of damages out to Plaintiff's retirement age, however, a second problem arises that has not been addressed by the parties. Under New Jersey law, where an exclusive distribution agreement lasts for an indefinite period, the exclusive distributor is entitled to reasonable notice that the exclusive distributorship would be terminated. *See Bak–A–Lum Corp. v. ALCOA Bldg. Prods., Inc.*, 69 N.J. 123, 351 A.2d 349, 351–52 (1976). By the same token, an exclusive distributorship agreement of indefinite duration may be terminated upon reasonable notice to the other party. Therefore, since the Independent Distribu-

tor Agreement at issue is of indefinite duration, Plaintiff's damages are limited to a reasonable time after termination of the Agreement. *See* Independent Distributor Agreement, ¶¶ 4.5, 9.1–9.4; Plaintiff's Resp. Br. Ex. 3; *Bak–A–Lum*, 351 A.2d at 351–52. While this issue does not necessarily go to the reliability of the Expert Witness Report, as a matter of law, Plaintiff cannot collect damages beyond a "reasonable" time period. Determining exactly what is a reasonable time, however, is a question of fact for the jury. *See Bak–A–Lum*, 351 A.2d at 352. *See also Zidell Explorations, Inc. v. Conval Intern., Ltd.*, 719 F.2d 1465 (9th Cir.1983). Accordingly, this Court will not presently determine whether Plaintiff's retirement age is a reasonable time.

### 3. Baczkiewicz's Application of "Benchmarks"

Defendants also claim that Baczkiewicz improperly utilized two "benchmarks" in estimating lost profits and lost equity. Specifically, Defendants claim that Baczkiewicz improperly applied a "before and after" model to measure future lost profits and improperly applied a "yardstick" approach to measure business value. "The before and after theory compares the [P]laintiff's profit record prior to the violation with that subsequent to it [and] the yardstick test ... consists of a study of the profits of business operations that are closely comparable to the [P]laintiff's." *Conwood Co., L.P. v. United States Tobacco Co.*, 290 F.3d 768, 793 n. 8 (6th Cir.2002) (quoting *Eleven Line, Inc. v. North Texas State Soccer Ass'n, Inc.*, 213 F.3d 198, 207 (5th Cir.2000)).

Defendants first claim that Baczkiewicz improperly applied a "before and after" model to predict the Plaintiff's future income based upon Plaintiff's past performance. The Court rejects this argument because historical performance is a sufficiently reasonable basis for the computation of lost profits. *See V.A.L. Floors*, 810 A.2d at 630. To contest the Plaintiff's estimate, the Defendants will have the opportunity for vigorous cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. With respect to this issue, the Defendants' Motion to Exclude is DENIED.

Second, the Defendants claim that Baczkiewicz's use of the Institute of Business Appraiser's database as a "yardstick" to predict the value of Plaintiff's lost owner-operator equity interest was improper. In his Expert Witness Report, Baczkiewicz states that he valued the equity interest based upon a market comparable method. *See* Engagement Report, p. 3; Defendants' Br. in Support, Ex. 4. It is uncontested that the sole source of comparable businesses used by Baczkiewicz to value the Plaintiff's owner-operator equity interest was the Institute of Business Appraiser's database. During his deposition testimony, however, Baczkiewicz discredited the use of this database for any purpose other than as a "sanity check"—

Q: Is [the Institute of Business Appraisers' database] a proper sample of the universe of transactions?

A: It is only what–it was collected in their data bases. And that is why it is never—that is why you will never see me use this as the predominant way I do a valuation. It is only a sanity check, a reasonableness part of my reports.

Q: I understand and that is what you said in other reports.

On the other hand, in this report the only way you get to the $64,000 number is by using these comparables; isn't that correct?

A: Because it is not a valuation report, but you are right.

Q: And that was because this was a preliminary report and you didn't have time to do anymore?

A: That is right.

*See* Baczkiewicz Dep., p. 73; Plaintiff's Resp. Br., Ex. B. Baczkiewicz, however, did not modify or update the owner-operator equity valuation contained in the preliminary report when he submitted the final Expert Witness Report. Accordingly, the market comparable method utilized by Baczkiewicz in the final Report predominantly relied upon a source of information which Baczkiewicz himself has stated is too unreliable for any purpose other than to be used as a "sanity check." Therefore, the Court finds that Baczkiewicz did not base his owner-operator equity estimate on sufficient facts or data, and that with regard to this issue, the Expert Witness Report's valuation of Plaintiff's lost owner-operator equity interest is barred by Rule 702 because the facts relied upon do not sufficiently satisfy Rule 702's reliability requirement. *See* FED. R. EVID. 702; *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir.1999). With respect to this issue, Defendants' Motion to Exclude Plaintiff's Damage Estimate is GRANTED.[5]

### 4. Mitigation

■ The Defendants claim that the Expert Witness Report is fatally flawed because it does not take into account mitigation. The Defendants, however, cite no applicable legal authority for the proposition that Baczkiewicz's Expert Witness Report should be excluded simply because it does not take into account possible miti-

gation.[6] Therefore, the Court rejects this argument. The Defendants have not made clear how the Report's reliability is dependent upon consideration of Plaintiff's efforts at mitigation.

### 5. Plaintiff's Damages Testimony

■ Defendants also seek to exclude any damages testimony by the Plaintiff himself, Mr. Swierczynski. Although the Defendants do not indicate the legal basis of their position, they argue that "Swierczynski's damages estimate fails for many of the same reasons as Baczkiewicz's estimate." *See* Defendants' Br. in Support, p. 18. Defendants appear to argue that since Mr. Swierczynski is unfamiliar with methods of business valuation or determining lost profits, he is incapable of testifying regarding his opinion of his damages.

In response, the Plaintiff concedes that he is not an expert, but argues that he should be able to testify to certain matters regarding damages. Specifically, Plaintiff claims that he should be able to testify (1) to authenticate his earnings history; (2) as to the value assigned to his route in the franchise agreement, and as to the difference between the proposed Red Wing route and his original route; (3) as to the growth of his route; (4) as to his mitigation efforts; and (5) as to the pain and anguish caused by the termination of the Agreement. In essence, the Plaintiff does not challenge the Defendants' argument, but instead seeks to be able to testify to those issues that fall outside the exclusion requested by the Defendants.

---

**5.** The Court notes that the Market Comparison Data supplied by the Institute of Business Appraisers and relied upon by Baczkiewicz provides the following disclaimer: "Because of the nature of sources from which the information is obtained, we are not able to guarantee its accuracy." *See* Baczkiewicz En-

gagement Report, p. 12; Defendants' Br. in Support, Ex. 4.

**6.** Defendants cite *Oakland Metal Stamping Co. v. Forest Indus., Inc.*, 352 Mich. 119, 89 N.W.2d 503, 506 (1958). As previously stated, however, New Jersey law is the applicable law in this case.

Since the Plaintiff does not directly challenge the Defendants' position, the Defendants' Motion on this issue is GRANTED. Plaintiff may not testify as an expert in calculating damages. The Plaintiff, however, may testify as to the five areas described above,[7] and as to any other matter that satisfies the requirements of FED. R. EVID. 402 (relevance) and FED. R. EVID. 602 (personal knowledge), or FED. R. EVID. 701 (opinion testimony by lay witness).

## B. Defendants' Motion for Summary Judgment on Damages

The Defendants' Motion for Summary Judgment on Damages is predicated on the success of the Defendants' Motion to Exclude Plaintiff's Expert Report. Since the Court has largely denied the Defendants relief, the Defendants' Motion for Summary Judgment on Damages is DENIED.

## IV. CONCLUSION

Accordingly, and as set forth above, to the extent Defendants' Motion seeks to exclude Plaintiff's damage estimate because it relied upon the Institute of Business Appraisers' database, and to the extent Defendants' Motion seeks to exclude Plaintiff from testifying as an expert on damages, the Defendants' Motion is GRANTED. In all other respects, the Defendants Motion to Exclude is DENIED. In addition, the Defendants' Motion for Summary Judgment on Damages is DENIED.

IT IS SO ORDERED.

---

7. Whether New Jersey law allows a plaintiff to recover damages for pain and suffering in a breach of contract action has not been briefed by the parties and the issue is not before the Court. The Court, therefore, makes no findings as to whether these particular damages are recoverable in this case.