**RGJ ASSOCIATES, INC. d/b/a Williamsville Products, Plaintiff,**

v.

**STAINSAFE, INC., Defendant.**

**No. CIV.A.01–10936–DPW.**

United States District Court, D. Massachusetts.

Jan. 21, 2004.

---

---

David A. Rich, Lawson & Weitzen, LLP, Boston, MA, J. Mark Dickison, Lawson & Weitzen, LLP, Boston, MA, for RGJ Associates, Inc. dba Williamsville Products, Plaintiff.

Henry C. Dinger, Dana A. Zakarian, Goodwin Procter, LLP, Boston, MA, Steven Ellison, Broad and Cassel, West Palm, FL, for Stainsafe, Inc., Defendant.

## PROCEDURAL ORDER RE: DAMAGES MEASUREMENT

BOWLER, Chief United States Magistrate Judge.

A review of the filings (Docket Entry##152, 155, 163 & 164) submitted in connection with the motion in limine by plaintiff RGJ Associates, Inc. ("RGJ"), d/b/a Williamsville Products ("Williams-ville"), to preclude the testimony of Christopher Barry and the second motion in limine by defendant Stainsafe, Inc. ("Stainsafe") to preclude the testimony of Howard J. Gordon ("Gordon") evidences that the parties dispute the proper method to measure contract damages for breach of the unwritten requirements contract [1] and for breach of the letter agreement. Clarification is therefore appropriate.

As explained in the June 2002 opinion, section 2–708 of the UCC, Mass. Gen. L. ch. 106, § 2–708 ("section 2–708"), governs the measure of contract damages. Where, as here, the difference between the market price and the unpaid contract price under section 2–708(1) would not place Williamsville "in as good a position as performance would have done," [2] section 2–708(2) allows RGJ to recover lost profits which Williamsville would have made from full performance, together with incidental damages and due allowance for reasonably incurred costs minus proceeds from any resale. (Docket Entry # 83, pp. 39–40; citing cases).

Damages for breach of contract are also governed by section 2–309 of the UCC, Mass. Gen. L. ch. 106, § 2–309 ("section 2–309"). *See Maytronics, Ltd. v. Aqua Vac Systems, Inc.,* 277 F.3d 1317, 1320–1321 (11th Cir.2002) (discussing UCC section identical to section 2–309 in the course of explaining the proper measure of damages in distributorship agreement); *Pharo Distributing Co. v. Stahl,* 782 S.W.2d 635, 638–639 (Ky.App.1989) (same); *Teitelbaum v. Hallmark Cards, Inc.,* 25 Mass. App.Ct. 555, 520 N.E.2d 1333, 1336–1337 (1988) (performance of supply contract governed by section 2–309). Section 2–309

---

1. As explained in the June 3, 2002 Report and Recommendation, a jury could find that in the fall of 1985 or in 1986 the parties entered into a requirements contract whereby Stainsafe's predecessor, Troy Furniture Products International ("Troy"), agreed to purchase all of its required products for the residential furniture care market from Williamsville. (Docket Entry # 83, p. 9).

2. Mass. Gen. L. ch. 106, § 2–708(2).

states that an agreement providing for successive performances[3] that is indefinite in duration is valid for a reasonable period of time. Mass. Gen. L. ch. 106, § 2–309(2). The parties did not place a time limit on the contract which is therefore valid only for a reasonable period of time. Mass. Gen. L. ch. 106, § 2–309(2); *Teitelbaum v. Hallmark Cards, Inc.*, 520 N.E.2d at 1336 (quoting section 2–309(2)); *accord Shearon v. Boise Cascade Corp.*, 478 F.2d 1111, 1117 (8th Cir.1973) (applying Iowa law to similar agreement and recognizing that " 'contract continues for a reasonable time' "); *see also Anglo Fabrics, Inc. v. Town of Webster*, 2002 WL 31187829 at * 10 (Mass.Super. July 1, 2002) ("contract which does not have a duration of term clause is not presumed to last in perpetuity or for an extended number of years unless there is an express term to that effect").

 Because the parties did not expressly agree to a durational term or to prevent termination, Massachusetts law construes the contract as terminable at will. *Serpa Corporation v. McWane, Inc.*, 199 F.3d 6, 14 (1st Cir.1999) ("[u]nder Massachusetts law, a contract without a durational term is terminable at will by either party upon reasonable notice"); *Labrecque v. Niconchuk*, 442 F.2d 1094, 1098 (1st Cir.1971) ("It is well settled that, without a term specifying duration, a distribution contract is a contract at will"); *Teitelbaum v. Hallmark Cards, Inc.*, 520 N.E.2d at 1336 (absent "express agreement preventing termination, the arrangement that existed was terminable at the will of either party"). Any termination, however, re-

quires reasonable notice to the non-terminating party. Mass. Gen. L. ch. 106, § 2–309(3); *Teitelbaum v. Hallmark Cards, Inc.*, 520 N.E.2d at 1336; *accord Maytronics, Ltd. v. Aqua Vac Systems, Inc.*, 277 F.3d at 1321 (because "Florida UCC requires reasonable notification prior to the termination of a terminable-at-will contract, it follows that the parties have an expectation that the contract will not end without such notification"); *Shearon v. Boise Cascade Corp.*, 478 F.2d at 1117 (applying Iowa law and noting that contract granting distributorship for indefinite time period " 'may be terminated without cause *only* upon reasonable notice' "); *Swierczynski v. Arnold Foods Co., Inc.*, 265 F.Supp.2d 802, 810 (E.D.Mich.2003) (applying New Jersey law and noting that, "where an exclusive distribution agreement lasts for an indefinite period, the exclusive distributor is entitled to reasonable notice that the exclusive distributorship would be terminated"). In such circumstances, the breach is the failure to give reasonable notice of the termination rather than the termination itself. *California Wine Association v. Wisconsin Liquor Co. of Oshkosh*, 20 Wis.2d 110, 121 N.W.2d 308, 318 (1963) (inasmuch as "the exclusive distributorship contract could be terminated at will, . . . the breach was the failure to give reasonable notice"); *Conneaut Metalcasters, Inc. v. Emco Wheaton, Inc.*, 1997 WL 560054 at * 3 (6th Cir. Sept.5, 1997) (Emco breached the volume purchase commitment when it stopped its purchases "only to the extent that it failed to give reasonable notice when it did so") (unpublished opinion).[4] The reasoning is

---

3. The parties' arrangement unquestionably calls for successive performances within the meaning of section 2–309.

4. In the Sixth Circuit, unpublished opinions carry no precedential weight and have no binding effect other than on the parties in the case. *United States v. Webber*, 208 F.3d 545, 551 n.3 (6th Cir.2000); 6 Cir. R. 28(g); *see*

*also Enterprise Capital, Inc. v. San–Gra Corporation*, 284 F.Supp.2d 166, 176 n. 5 (D.Mass. 2003) (examining Connecticut law regarding unpublished opinions to support citation of unpublished Connecticut case). Nevertheless, unpublished opinions in the Sixth Circuit often "carry persuasive weight." *United States v. Webber*, 208 F.3d at 551 n. 3.

best expressed as follows by the court in *Pharo:*

It is not the termination of an at-will contract that constitutes the breach; the right to terminate is inherent in the nature of the contract. Nor is it relevant that a party losing an at-will contract suffers losses. Again, this is an inherent probability. Rather, it is the failure to give reasonable notice before termination that constitutes breach.

*Pharo Distributing Co. v. Stahl,* 782 S.W.2d at 638.

Further, as uniformly held by the majority of courts, the amount of damages following the termination date is limited to the time period of what constitutes reasonable notice. *Maytronics, Ltd. v. Aqua Vac Systems, Inc.,* 277 F.3d at 1321 (party should be placed in same position it would have been in but for "the failure to give proper notice;" nonbreaching party therefore entitled to lost profits "it would have made from the contract *during* the notice period") (emphasis added); *King v. Exxon Co., U.S.A.,* 618 F.2d 1111, 1119 (5th Cir.1980) (proper measure of damages for "contract of indefinite duration terminable at will upon reasonable written notice . . . is the net profit that would have been earned by the plaintiff during that period of time constituting reasonable notice of termination"); *Swierczynski v. Arnold Foods Co., Inc.,* 265 F.Supp.2d at 810–811 (since distributorship agreement "is of indefinite duration, Plaintiff's damages are limited to a reasonable time after termination of the Agreement"); *California Wine Association v. Wisconsin Liquor Co. of Oshkosh,* 121 N.W.2d at 318 (after notice of termination of distributorship agreement, "the breach continued to run only for the period of reasonable notice"). Massachusetts law applying section 2–309 adheres to these principles. *Teitelbaum v. Hallmark Cards, Inc.,* 520 N.E.2d at 1336 ("the adequacy of the notice is generally coextensive with the amount of harm that can be proved by the party who has incurred the loss of a supplier"); *Serpa Corporation v. McWane, Inc.,* 199 F.3d 6, 14 (1st Cir.1999) (quoting *Teitelbaum* ). Furthermore, any such damages must result

The parties are advised to examine *Conneaut* inasmuch as it allows for the recovery of *"additional* damages" presumably during the reasonable notification period if the termination notice was unreasonable, *Conneaut Metalcasters, Inc. v. Emco Wheaton, Inc.,* 124 F.3d 197, 1997 WL 560054 at * 4 n. 1 (6th Cir. Sept.5, 1997) (emphasis added), as well as recovery for breach of the volume purchase commitment occurring *prior* to the termination of the plaintiff as a vendor in the fall of 1988. *See Conneaut Metalcasters, Inc. v. Emco Wheaton, Inc.,* 124 F.3d 197, 1997 WL 560054 at * 3–4 & n. 1 (6th Cir. Sept.5, 1997) (further instructing the lower court on remand to determine if in the years 1986 to 1988, the defendant had a good faith requirement for brass castings and whether only in the year 1988 the defendant had a good faith requirement for aluminum castings). By analogy, RGJ may be entitled to recovery for breach of the *"conscious sales effort"* obligation occurring prior to the termination date

in addition to damages during the reasonable notification period occurring after the termination in the event of an unreasonable notification. As to Massachusetts case law other than *Cherick Distributors, Inc. v. Polar Corporation,* 41 Mass.App.Ct. 125, 669 N.E.2d 218 (1996), the plaintiff in *Teitelbaum* did not suffer damages between the June 4, 1981 oral agreement and the July 8, 1981 notice of termination which, in any event, unquestionably amounted to reasonable notice. *Teitelbaum v. Hallmark Cards, Inc.,* 520 N.E.2d at 1335–1337; *see also Serpa Corporation v. McWane, Inc.,* 199 F.3d 6, 12 & 14–15 (1st Cir.1999) (no breach of implied duty of good faith based on the evidence, no evidence that Serpa experienced damages before the termination notice inasmuch as "Serpa's injuries flow[ed] from the termination of its distributorship" and no evidence that notice was unreasonable). This court, however, has not made a final determination on these issues including the effect of a material breach of

from the inadequate notice of termination as opposed to the loss of the business due to the termination itself, *Serpa Corporation v. McWane, Inc.,* 199 F.3d at 14 ("there is no evidence in the record that Serpa's injuries resulted from inadequate notice of termination"); *accord Pharo Distributing Co. v. Stahl,* 782 S.W.2d at 638 (because "it is the failure to give reasonable notice of termination rather than the termination of the contract itself which constituted the breach, ... [t]he damages may not reflect loss of a contract or discontinuance of the business relationship"), and RGJ has the burden of proving the amount of the loss. *Teitelbaum v. Hallmark Cards, Inc.,* 520 N.E.2d at 1336 (noting that it is "the amount of harm that can be proved by the party who has incurred the loss of a supplier"); *accord Anglo Fabrics, Inc. v. Town of Webster,* 2002 WL 31187829 at * 10 (Mass.Super. July 1, 2002) ("Anglo Fabrics has the burden of showing that its 'injuries resulted from the inadequate notice of termination' ").[5]

Determining what constitutes a reasonable notification of termination time as well as the date of termination is a question for the finder of fact. *Swierczynski v. Arnold Foods Co., Inc.,* 265 F.Supp.2d at 811 ("[d]etermining exactly what is a reasonable time ... is a question of fact for the jury"); *Conneaut Metalcasters, Inc. v. Emco Wheaton, Inc.,* 124 F.3d 197, 1997 WL 560054 at * 4 (6th Cir. Sept.5, 1997) (remanding case for more specific factual finding of the date of termination in nonjury trial). Under section 2–309, the reasonableness of the notice of termination is measured in terms of the amount of time "as will give the other party reasonable time to *seek* a *substitute* arrangement." Mass. Gen. L. ch. 106, § 2–309, Comment 8 (emphasis added); *see Teitelbaum v. Hallmark Cards, Inc.,* 520 N.E.2d at 1336 ("reasonableness of notice of termination in agreements falling within § 2–309 is measured in terms of the ability of the party affected by the termination to obtain a substitute arrangement"); *accord Pharo Distributing Co. v. Stahl,* 782 S.W.2d at 638 ("[r]easonable notice is that period of time which, under the circumstances of the case, would allow one to make alternate arrangements upon cessation of the contract and minimize losses").[6] The jury will be instructed in accordance with the foregoing principles. *See King v. Exxon Co., U.S.A.,* 618 F.2d 1111, 1119 (5th Cir.1980) (reversing jury award due to failure of trial court to provide guidance to the jury "on the time period over which it could assess damages based on plaintiff's loss of net profits");

the "conscious sales effort" obligation occurring prior to the termination.

**5.** RGJ's reliance on *Cherick* because the court states that Chernick was not required "to establish that it could have procured" a substitute exclusive arrangement during the reasonable notification period, *Cherick Distributors, Inc. v. Polar Corporation,* 41 Mass.App. Ct. 125, 669 N.E.2d 218, 220 n. 1 (1996), is misplaced. The statement is not directly contrary to the above principle. Moreover, the court made the statement in the context of discussing a breach of the implied duty of good faith under which the court awarded damages for loss of business. *See Cherick Distributors, Inc. v. Polar Corporation,* 669 N.E.2d at 220. The court did not otherwise discuss the limitation of damages for breach

of contract wherein the breach is the failure to give adequate notice and, in any event, an award of $50,000 where the business was valued at $228,000 may fall within any necessary temporal limitations.

**6.** As more fully explained by the court in *Pharo:*

> The obvious object of the reasonable notice requirement is to afford the party losing the contract an opportunity to make appropriate arrangement in lieu thereof by dispersing inventory, adjusting work force, exploring probable alternatives, and in general, "getting his house in order" to proceed in absence of the former relationship.

*Pharo Distributing Co. v. Stahl,* 782 S.W.2d at 638.

*Shearon v. Boise Cascade Corp.,* 478 F.2d at 1117–1118 (remanding for new trial inasmuch as length of time period for jury to award damages was insufficiently explained to the jury).

■■ In assessing the proposed expert testimony, RGJ's past experience and profit margins are, of course, relevant to the calculation of lost profits following the termination date. *See Swierczynski v. Arnold Foods Co., Inc.,* 265 F.Supp.2d at 809 (noting, albeit in context of applying New Jersey law, that, "Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits 'with a reasonable degree of definiteness' "). Sales by the buyer, Stainsafe, immediately after termination are also a reliable gage of lost profits. *See Shearon v. Boise Cascade Corp.,* 478 F.2d at 1117 (under Iowa law proof of damages in breach of distributorship agreement permissible through sales made by successor to injured seller); *see generally* James Lockhart, *Establishment and Construction of Requirements Contracts Under § 2–306(1) of the Uniform Commercial Code,* 94 A.L.R. 5th 247, § 46 (2001).

Nevertheless, RGJ cannot recover breach of contract damages beyond the reasonable notification period following the date of termination.[7] In this context, allowing the jury to hear expert testimony of lost profits for breach of the letter agreement or the unwritten requirements contract from Gordon calculated over an unusually long period of time is problematic. *See Maytronics, Ltd. v. Aqua Vac Systems, Inc.,* 277 F.3d at 1320 (discussing *Centro Nautico Representacoes Nauticas, LDA v. International Marine Co-op, Ltd.,*

719 So.2d 967 (Fla.Dist.Ct.App.1998), and noting that the lost profits sought by distributor in that case, five to seven years, "unquestionably exceeds the reasonable notice required by the UCC"). It is therefore suggested that RGJ reduce the five year time period to a more reasonable amount of time. *See, e.g., Des Moines Blue Ribbon Distributors, Inc. v. Drewrys Limited, U.S.A., Inc.,* 256 Iowa 899, 129 N.W.2d 731, 737 (Iowa 1964) (upholding jury award; six year arrangement prior to termination wherein the plaintiff limited claim for lost profits to approximately one year). This court is also troubled by Gordon's erroneous assumption in the first expert report and, perhaps, the second, that the contract "was terminable by RGJ, but not by Stainsafe." (Docket Entry # 154, p. 5). Having denied Stainsafe's motion in limine to preclude Gordon's testimony in open court on January 8, 2004, Stainsafe may raise its concerns at trial. *See, e.g., Swierczynski v. Arnold Foods Co., Inc.,* 265 F.Supp.2d at 811 (expert's report satisfied *Daubert*[8] and *Kumho*[9] in distributorship at will breach of contract case given reliability of methodology basing lost profits on past historical business growth; court therefore declined to "presently" determine whether expert's damages calculations extending to the plaintiff's retirement age exceeded reasonable notification of termination time period).

---

7. RGJ's mistakenly relies on *McEvoy Travel Bureau, Inc. v. Norton Company,* 408 Mass. 704, 563 N.E.2d 188 (1990). The breach of contract claim was not before the court. *McEvoy Travel Bureau, Inc. v. Norton Company,* 563 N.E.2d at 190. Rather, the court addressed only the fraud and chapter 93A claims.

8. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

9. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).